54 P.3d 155 (2002)
113 Wash.App. 482
STATE of Washington, Respondent,
v.
Anthony Paul JOHNSON, Appellant.
No. 47176-7-I.
Court of Appeals of Washington, Division 1.
August 19, 2002.
Publication Ordered and Reconsideration Denied September 23, 2002.
*157 Anthony P. Johnson, pro se.
Wash.App. Project, Nancy Collins, Seattle, WA, for Appellant.
King County Prosecuting Atty., Donald James Raz, Deputy, Seattle, WA, for Respondent.
*156 PER CURIAM.
Anthony Paul Johnson appeals his conviction of second degree murder, arguing that the trial court violated double jeopardy. But the court found that alternate charges of intentional murder and felony murder constituted a single offense and properly entered judgment and sentenced Johnson for only one crime. Thus there were no multiple punishments violating double jeopardy. Johnson's pro se arguments also fail. We affirm.

FACTS
Johnson and Michael Ruff were friends. Ruff lived with his mother Essie Winters and stepfather Adrian Winters. One evening, while Essie was watching television in her living room, she overheard Ruff in another room, denying some sort of accusation on the telephone. Shortly afterwards, someone came to the front door and Essie heard the sounds of a struggle and more denials from Ruff, but did not see anyone. The sounds quickly moved closer to the door to the living room, and Essie saw a spray of blood in the entry hall. Ruff ran into the living room, holding his neck and spattering the telephone with blood as he and Essie tried to call 911. Ruff told her that "An-dog" had hurt him. Johnson's nickname was "Ant-dog."
Adrian Winters, awakened by the noise, came into the living room and tried to stop Ruff's bleeding with a towel. When they had difficulty communicating with the 911 operator, Ruff ran to his neighbor David Wilkins' home and pounded on the door. Before Wilkins got to his door, Ruff ran into the street, where Wilkins then found him sitting. While they waited for medics, Ruff talked about Jesus and said he was "ready to go." Ruff also said that Johnson had thought that he was messing with Johnson's car and stabbed Ruff. Police arrived and Ruff gave them Johnson's name and address and described Johnson's Mazda RX-7. Medics transported Ruff to the hospital, but doctors were unable to stop the bleeding from Ruff's seven knife wounds and he died.
Police were initially unable to find Johnson at his home but after approximately two hours, learned he had returned. When they met him, he appeared to be very clean, as if he had bathed, and his clothes appeared very clean. Johnson made several spontaneous statements after his arrest. He had thought Ruff was his friend; Ruff only pretended to like him and was envious; Ruff was supposed to work on his car; and three lug nuts on a wheel had been loosened. Johnson also asked why anyone would want to hurt him.
The State charged Johnson with one count of first degree premeditated murder and a second, alternative count of second degree felony murder. Each count also contained a deadly weapon allegation. The defense presented a defense of alibi through testimony from one of Johnson's friends and Johnson. The defense also proposed lesser included offense instructions. The jury found Johnson guilty of second degree intentional murder as a lesser included offense of first degree murder, and found him guilty as charged of second degree felony murder. The jury also found, as to each count, that a deadly weapon was used.
During discussion of jury instructions and again before sentencing, defense counsel argued that the charging scheme violated double jeopardy. The court disagreed, reasoning that the two counts merely described alternative means for one crime of second degree murder, and entered the finding that "Counts I & II merge into one conviction of Murder in the Second Degree." The court imposed only one sentence.

*158 DECISION
Double Jeopardy
Johnson contends his sentence violates the constitutional prohibition against double jeopardy.[1] The double jeopardy clauses of the Fifth Amendment and article 1, section 9 of the Washington Constitution prohibit multiple punishments for the same offense.[2] Felony murder and intentional murder of the same victim are alternative means of committing one offense,[3] and are therefore the same offense for double jeopardy purposes.[4] The question here is thus whether Johnson received multiple punishments. We conclude that he did not.
Johnson's judgment and sentence contains four sections, labeled "Hearing", "Findings", "Judgment" and "Order." In the findings, the court correctly recited that Johnson was found guilty on both counts by jury verdict, but further found that the two counts constituted only one conviction.[5] In the judgment section, the court adjudged Johnson guilty as set forth in the findings, thus incorporating the language that there was but one conviction. The court sentenced Johnson to 219 months of incarceration only on count I and imposed no sentence regarding count II. Therefore, contrary to Johnson's claim, the judgment and sentence does not impose "two counts of conviction" constituting multiple punishments. And while Johnson cites authority that multiple convictions violate double jeopardy even if the sentences run concurrently, the cases are inapposite because Johnson received only one conviction and one sentence.[6]
Johnson focuses on the court's use of the word "merge" and argues that the merger doctrine does not insulate the sentence from his double jeopardy challenge because merger is defined in the Sentencing Reform Act and is limited to "situations where multiple convictions are counted as one crime for purposes of calculating the offender score." This argument fails for two reasons. First, merger is not simply a creation of the Sentencing Reform Act. "The double jeopardy clauses of the United States and Washington constitutions are the foundation for the merger doctrine."[7] The second and more important reason is that despite using the word "merge," the court was not applying the merger doctrine. The doctrine is a rule of statutory construction used to determine when the Legislature intends that an act violating more than one statute is to be punished as a single crime.[8] Here the court *159 properly understood that because felony murder and intentional murder are alternative means, there could be only one conviction. The court chose its language not to invoke the merger doctrine but to create the effect of a merger.[9] "Where offenses merge and the defendant is punished only once, there is no danger of a double jeopardy violation."[10] Johnson's double jeopardy claim fails because he did not receive multiple punishments.
Pro Se Arguments
Johnson argues that double jeopardy was violated because he was charged with four crimes. He reasons that he was charged with four crimes because the jury received four instructions defining crimes. But the trial court properly gave three definitional instructions regarding the premeditated murder count because Johnson received lesser included offense instructions for that count.[11] And the fourth definition properly reflected the count charging the alternative means of second degree felony murder.[12] Moreover, contrary to Johnson's claim, because the two counts involved alternative means, not alternative crimes, the jury was not required to elect only one of the means.[13] And the State properly charged both alternative means because they are not repugnant.[14]
Johnson also cites a number of concurring and dissenting opinions to argue that the State's charging scheme prejudiced him. But as the trial court correctly held, the circumstances of this case made it clear to the jury that there was but one homicide and the jury would not have been misled to Johnson's detriment into convicting solely because of a multiplicity of charges.[15] And even if the State's charging scheme could be thought to violate the multiplicity doctrine, Johnson has failed to demonstrate prejudice entitling him to any relief.[16]
Johnson challenges many evidentiary rulings. We review the rulings for abuse of discretion.[17] An abuse occurs when the court's decision is manifestly unreasonable or based on untenable grounds.[18] We find no error here.[19]
Admitting evidence about Johnson's car was proper as Ruff's supposed sabotage of Johnson's car was the State's theory of motive for the killing. Similarly, the court properly admitted evidence of the tire irons sitting loose in Johnson's car because, as the court noted, an inference could be drawn that Johnson had just used them to tighten the lug nuts Ruff had loosened. Johnson's nickname "Ant-dog" was relevant to the issue of identity of the perpetrator and was not so *160 prejudicial as to preclude its admission.[20] Likewise, Essie Winters' testimony that Ruff often referred to Johnson as "man" also went to Johnson's identification. Testimony concerning Essie Winter's physical condition was relevant to her limited abilities to intervene in the fight and summon help, and in addition was obviously not prejudicial to Johnson because her partial paralysis and speech impediment infirmities were apparent to the jury. Nor was the judge inappropriately solicitous.[21] Winter's testimony that Ruff and Johnson had physical battles in the past was not improper propensity evidence because in context she was clearly not referring to any type of altercation remotely similar to what happened here, but rather was explaining why the first sounds of struggle did not alert her that anything serious was going on.[22] Officer Volluz' observations that Johnson had washed and was wearing clean clothes did not constitute an impermissible opinion on guilt. And Johnson's complaints about the autopsy photographs are unreviewable as he has not provided the exhibits.[23]
Ruff's statements identifying Johnson as his attacker were admissible as dying declarations. Ruff's statements about Jesus and being ready to go, together with his wounds and the very large quantity of blood he shed, showed he understood he had suffered fatal injuries.[24] Likewise, Ruff's cries for help were admissible excited utterances relevant as foundation for the dying declarations.[25]
Johnson's challenge to admission of his post-arrest statements fails because substantial evidence supported the conclusion that the statements were voluntary. Johnson was properly advised of his rights and police neither interrogated him nor engaged in the functional equivalent of interrogation.[26]
Johnson challenges the sufficiency of the evidence, arguing that the State failed to negate the possibility that Ruff was not the aggressor. But the evidence, considered in the light most favorable to the State[27] could support a rational finding that Johnson was the aggressor because he suffered no injuries or wounds and was motivated by anger over what he believed was Ruff's sabotage of his car. Likewise, even though none of the seven knife wounds individually struck a vital organ, their number, depth, and placement sufficiently demonstrated intent to assault and kill to sustain the jury's verdict.
Johnson claims prosecutorial misconduct deprived him of a fair trial. To establish prosecutorial misconduct, the defendant bears the burden of showing the impropriety as well as its prejudicial effect.[28] Johnson's claims that the prosecutor improperly and prejudicially expressed an opinion on guilt by referring to his demeanor while testifying fail because, considered in context,[29] the arguments did no more than argue that Johnson was not a credible witness.[30] *161 Likewise the prosecutor did not commit misconduct by arguing that Johnson's alibi witness was incredible.[31]
Johnson makes claims of ineffective assistance of trial counsel that fail because they depend on matters outside the record and cannot be reviewed here.[32] His complaint that counsel failed to cross-examine witness Eric Cristano about Johnson's nickname "Mad Dog" depends on a police report that is not in the record. Johnson's claim that counsel failed to cross-examine Essie Winters about statements she made to Cristano and his claim that trial counsel was biased because counsel was not fully paid both fail for the same reason.
Johnson's other ineffective assistance claims fail because Johnson does not make the necessary showing of deficient performance and resulting prejudice.[33] Johnson's complaint about counsel's failure to object to testimony about Essie Winter's physical condition fails because, as discussed above, the evidence was relevant and counsel took the reasonable tactical approach of being solicitous of her condition. Failing to object to the prosecutor's argument was not deficient performance because it was not objectionable. Failing to argue that there was another Anthony Johnson in the neighborhood was tactically reasonable because of Johnson's relationship with Ruff and the evidence of Johnson's car that reduced misidentification as a viable theory. Nor was counsel ineffective for failing to argue self-defense when Johnson denied involvement and the evidence showed that Ruff suffered fatal wounds and Johnson suffered no injuries.[34]
Finally, Johnson alleges cumulative error. As we reject all of Johnson's pro se arguments,[35] there is no prejudice to accumulate.
Affirmed.
NOTES
[1] Johnson's appellate counsel originally raised three claims. Acting on Johnson's instructions, counsel by motion withdrew the second and third claims. The second claim was that the trial court erred by submitting the alternate felony murder charge to the jury, and the third claim challenged the prosecutor's cross-examination of the defense witness about her delay coming forward. Also on Johnson's instructions, counsel amended Johnson's prayer for relief as to the double jeopardy claim to reject any remedy of vacation of one of the verdicts and instead requests a retrial. Johnson repeats this position in his extensive pro se pleadings.
[2] State v. Calle, 125 Wash.2d 769, 888 P.2d 155 (1995); State v. Maxfield, 125 Wash.2d 378, 886 P.2d 123 (1994).
[3] State v. Berlin, 133 Wash.2d 541, 553, 947 P.2d 700 (1997).
[4] State v. Schwab, 98 Wash.App. 179, 988 P.2d 1045 (1999).
[5] See Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)

("If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.")
[6] Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740; In re Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000); State v. Read, 100 Wash.App. 776, 998 P.2d 897, rev. granted and remanded on other grounds, 142 Wash.2d 1007, 13 P.3d 1065 (2000). Likewise, our recent decision in State v. Gohl, 109 Wash. App. 817, 37 P.3d 293 (2001) does not require any different result because there the trial court entered only a finding that two crimes were the same criminal conduct and did not rule, as the court did here, that there was only one conviction.
[7] State v. Parmelee, 108 Wash.App. 702, 710, 32 P.3d 1029 (2001).
[8] Id. The merger doctrine applies when one crime is "elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code." Id. But the question is not whether the trial court correctly found a merger but whether the trial court violated double jeopardy. As our Supreme Court has noted, "the term `merger' is used in several different contexts." State v. Vladovic, 99 Wash.2d 413, 419 n. 2, 662 P.2d 853 (1983).
[9] See State v. Trujillo, 112 Wash.App. 390, 401, 49 P.3d 935 (2002) (verdict on a lesser charge "merges" into greater charge when judgment on greater charge is no longer subject to appeal).
[10] State v. Parmelee, 108 Wash.App. at 711, 32 P.3d 1029.
[11] RCW 10.61.003.
[12] State v. Berlin, 133 Wash.2d at 553, 947 P.2d 700.
[13] Id. Because the State charged the alternatives in separate counts and the jury was instructed to enter unanimous verdicts on each count, Johnson actually received a greater assurance of unanimity on each alternative means than the constitution requires.
[14] Id.
[15] See Ball v. United States, 470 U.S. 856 at 867, 105 S.Ct. 1668, 84 L.Ed.2d 740 (Stevens, J. concurring).
[16] See State v. Noltie, 116 Wash.2d 831, 847, 809 P.2d 190 (1991); 4 W. LaFave & J. Israel, Criminal Procedure § 19.3, at 776-77 (1984).
[17] State v. Wade, 138 Wash.2d 460, 463-64, 979 P.2d 850 (1999).
[18] Id. at 464, 979 P.2d 850.
[19] The State correctly argues that there were no objections to many of these rulings. Because Johnson argues alternatively that any failure to object constituted ineffective assistance of counsel, we choose to resolve the claims on the merits.
[20] ER 404(b), 403.
[21] See State v. Swenson, 62 Wash.2d 259, 382 P.2d 614 (1963), overruled on other grounds by State v. Land, 121 Wash.2d 494, 500, 851 P.2d 678 (1993).
[22] ER 404(b).
[23] State v. Malone, 72 Wash.App. 429, 434, 864 P.2d 990 (1994); State v. Stevens, 58 Wash.App. 478, 492, 794 P.2d 38, review denied, 115 Wash.2d 1025, 802 P.2d 128 (1990) (appellant's duty to perfect the record so the reviewing court can review assignments of error).
[24] ER 804(b)(2).
[25] ER 803(a)(2); State v. Davis, 141 Wash.2d 798, 843, 10 P.3d 977 (2000).
[26] Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).
[27] State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980).
[28] State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997); cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998); State v. Gentry, 125 Wash.2d 570, 640, 888 P.2d 1105, cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 79 (1995).
[29] State v. Bryant, 89 Wash.App. 857, 873, 950 P.2d 1004 (1998) (appellate courts review allegedly improper comments in the context of the entire argument and the instructions given).
[30] State v. Rivers, 96 Wash.App. 672, 674, 981 P.2d 16 (1999) ("counsel is entitled to `comment on a witness's veracity or invite the jury to make reasonable inferences from the evidence so long as counsel does not express a personal opinion.'").
[31] Johnson himself testified that "She had her days confused, apparently" and described her as "doofy."
[32] State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995); State v. Bugai, 30 Wash. App. 156, 158, 632 P.2d 917, review denied, 96 Wash.2d 1023 (1981).
[33] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (To establish ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced defendant.).
[34] Nor is this claim supported by Essie Winter's comments at sentencing, which Johnson takes out of context to argue that Ruff was angry with Johnson.
[35] Johnson takes issue with police materials from a separate incident and further claims that trial transcripts are not accurate. These conclusory claims entitle him to no relief. State v. Elliott, 114 Wash.2d 6, 15, 785 P.2d 440, cert. denied, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990) (court need not consider claims insufficiently argued); State v. Marintorres, 93 Wash. App. 442, 452, 969 P.2d 501 (1999) (court need not consider conclusory pro se arguments); State v. Berrysmith, 87 Wash.App. 268, 279, 944 P.2d 397 (1997), review denied, 134 Wash.2d 1008, 954 P.2d 277 (1998) (court need not reach pro se argument unsupported by authority).