[No. 51012-6-I. Division One. January 10, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. RUSSELL WARD, *Appellant*.

*Eric Broman* and *Sabrina K. Housand* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *James M. Whisman* and *Catherine M. McDowall, Deputies*, for respondent.

¶1 BAKER, J. — Russell Ward argues that the trial court erred by sentencing him for second degree felony murder based on the predicate felony of second degree assault. We agree. Therefore, we follow the holding in *In re Personal Restraint of Andress*,[1] and vacate. In addition to finding Ward guilty of felony murder, the jury also found Ward guilty of first degree manslaughter as an alternative to felony murder. In an effort to avoid double jeopardy, the court did not enter judgment and sentence on the manslaughter charge. Ward argues that the court now has no authority to revive the first degree manslaughter verdict. In the alternative, he argues that he should receive a new trial because the court erred by giving an "aggressor" instruction or that his counsel was ineffective by not sufficiently raising the instructional objection at trial. But substantial evidence supports the court's decision to give the "aggressor" instruction, and Ward received effective assistance. We return Ward to the position he would have been in if the felony-murder conviction had not occurred, and remand for entry of judgment and sentence for first degree manslaughter.

I

¶2 The State charged Ward with both alternatives of second degree murder, intentional murder, and felony murder, as a result of his actions during a fight that led to the death of Theodore "Jake" Jansen. The predicate felony for the felony murder charge was second degree assault.

¶3 The incident began with a fistfight between Jake and Michael Starr. Although testimony as to why the fight began is unclear, the witnesses were in agreement that Starr arrived at the scene with Ward. According to the testimony of two witnesses, one Jake's friend and the other

---

[1] 147 Wn.2d 602, 56 P.3d 981 (2002).

Jake's half brother, Ward joined a fight between Starr and Jake by trying to hit Jake with a bottle. A third witness, Jake's girl friend, testified that Ward started the fistfight and also escalated the fight by trying to hit Jake with a bottle.

¶4 During the fight, Jake twice armed himself with a knife. The fight ended with Ward stabbing Jake in the back. The medical examiner testified that Jake died because of a stab wound to his back.

¶5 At the end of testimony, the trial court gave the jury both a self-defense and an "aggressor" instruction. The self-defense instruction stated that:

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he or she is being attacked to stand his or her ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

¶6 The "aggressor" instruction stated:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill or use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

¶7 The jury found Russell Ward guilty of second degree felony murder. On the alternative charge of second degree intentional murder, the jury found Ward not guilty, instead finding him guilty of the lesser included offense, first degree manslaughter.

¶8 At sentencing, Ward moved to have the first degree manslaughter conviction vacated. The court denied the motion and instead chose to sentence Ward on only the second degree felony murder conviction. The court entered a judgment and sentence that did not mention the jury's finding of guilt on the first degree manslaughter charge.

## II

■ ¶9 We review questions of law de novo.[2]

■ ¶10 Ward argues under *Andress* that we should vacate his conviction for second degree felony murder because it was based on a predicate felony of second degree assault. In *Andress*, our Supreme Court held that assault may not serve as the predicate crime to convict a defendant of second degree felony murder.[3] The State argues that *Andress* should apply prospectively and, therefore, should not apply to Ward because he was convicted before the *Andress* decision was issued.

¶11 But a recent ruling by our Supreme Court in *In re Personal Restraint of Hinton*[4] clarified that the ruling in *Andress* "determined what [former RCW 9A.32.050 (1976)] had meant since 1976."[5] The court explained in *Hinton* that "at the time the petitioners committed the acts for which they were convicted, assault could not stand as the predicate felony for second degree felony murder."[6] The court further explained that "[t]he petitioners have thus been convicted of crimes under a statute that, as construed in *Andress*, did not criminalize their conduct as second degree felony murder."[7] Under *Andress*, Ward was convicted of a crime under a statute that did not criminalize his conduct as second degree felony murder. We vacate his judgment and sentence for felony murder.

■ ¶12 Next, Ward argues that based on constitutional prohibitions against double jeopardy, he may not be charged, tried, or sentenced for second degree murder because he was found not guilty by the jury of intentional

---

[2] *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

[3] *Andress*, 147 Wn.2d at 604.

[4] 152 Wn.2d 853, 100 P.3d 801 (2004).

[5] *Hinton*, 152 Wn.2d at 859.

[6] *Hinton*, 152 Wn.2d at 860.

[7] *Hinton*, 152 Wn.2d at 860.

murder. The State does not respond and thus, concedes this point.

¶13 Ward also argues that he cannot be charged, tried, or sentenced for first degree manslaughter, because the manslaughter verdict should have been vacated, or was vacated by operation of law. He then argues that once vacated, the verdict is no longer available to the State now that the felony murder is vacated. Therefore, the courts do not have authority to "revive" the manslaughter verdict.

¶14 Ward is correct that convicting and sentencing a defendant for both second degree felony murder and first degree manslaughter for a single homicide would violate the state and federal guaranties against double jeopardy.[8] And where there is a violation of double jeopardy, the remedy is to vacate one of the convictions and sentences.[9] But Ward was not convicted and sentenced to both second degree felony murder and first degree manslaughter. Instead, the judge entered judgment and sentenced Ward only on the second degree felony murder charge; therefore there was no violation of double jeopardy. Because there was no violation of double jeopardy, the court was not required to vacate the manslaughter charge.

¶15 Moreover, in *State v. Johnson*,[10] we affirmed a procedure similar to the one used by the trial court in Ward's case.[11] In *Johnson*, the trial court, in an effort to avoid violating the defendant's right against double jeopardy, chose to sentence him on only one of the two charges of which the jury found him guilty, and did not vacate the other charge.[12] In our ruling, we noted that the trial "court properly understood that because felony murder and inten-

---

[8] *State v. Schwab*, 98 Wn. App. 179, 188, 988 P.2d 1045 (1999).

[9] *See Schwab*, 98 Wn. App. at 189 (where court vacated first degree manslaughter conviction because both manslaughter and felony murder convictions were based on same homicide).

[10] 113 Wn. App. 482, 54 P.3d 155 (2002).

[11] *Johnson*, 113 Wn. App. at 485-87.

[12] *Johnson*, 113 Wn. App. at 489 n.8.

tional murder are alternative means, there could be only one conviction."[13] We also commented that by applying a rule of statutory construction, the court correctly determined that the legislature intended that the act violating more than one statute could be punished only as a single crime.[14] Thus, by sentencing the defendant to only one crime, the court avoided error.[15] Like the trial court in *Johnson*, the trial court did not commit error when it sentenced Ward for felony murder only.

¶16 Ward also argues that the State has no authority to revive the manslaughter charge. Part of Ward's argument is that the trial court did not include the manslaughter verdict in the judgment and sentence or in the findings of fact; therefore, the State no longer has the option to act upon the jury verdict finding Ward guilty of manslaughter. Ward argues that an absence of a finding equates to a negative finding.

¶17 It is true that "the absence of a finding in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against that party on that issue."[16] But a jury's verdict is its finding of the facts.[17] The jury found Ward guilty of first degree manslaughter and the verdict was entered into the record.

¶18 Moreover, "[i]n the absence of a written finding on a particular issue, an appellate court may look to the oral opinion to determine the basis for the trial court's resolution of the issue."[18] If no inconsistency exists, appellate courts may use "the trial court's oral ruling to interpret written findings and conclusions."[19] In its oral ruling, the

[13] *Johnson*, 113 Wn. App. at 489.

[14] *Johnson*, 113 Wn. App. at 489.

[15] *Johnson*, 113 Wn. App. at 489.

[16] *In re Marriage of Olivares*, 69 Wn. App. 324, 334, 848 P.2d 1281 (1993).

[17] *State v. Willoughby*, 29 Wn. App. 828, 835, 630 P.2d 1387 (1981).

[18] *In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

[19] *State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994).

trial court explained that the manslaughter and murder counts were charged in the alternative, that Ward was convicted of both, but he would be sentenced only for the felony murder. Therefore, even though the manslaughter conviction was not mentioned in the court's written findings of fact, the court in its oral ruling stated clearly that Ward had been convicted of manslaughter as well as felony murder.

¶19 Ward also argues, under *State ex rel. Burgunder v. Superior Court*,[20] that the trial court lacked inherent authority to defer sentencing.[21] But even assuming the holding in *Burgunder* is applicable to the facts in Ward's case, our Supreme Court did not order dismissal of the defendant's conviction in *Burgunder*, but instead ordered the trial court to enter the judgment and sentence.[22] Thus, the holding in *Burgunder* does not support Ward's argument that he should not be subject to the first degree manslaughter conviction.

■■ ¶20 Even assuming that a procedural error occurred, the Fourth Circuit has commented that appellate courts do not need to grant a defendant a windfall resulting from an error committed by the trial court.[23] Ward would receive a large windfall if we vacated his felony murder conviction *and* ignored the guilty verdict on the charge of manslaughter. Instead, the appellate court may seek to place the defendant "in exactly the same position in which he would have been had there been no error in the first instance."[24] Ward was found guilty of first degree manslaughter. Entering judgment and sentence against him now is not a violation of his constitutional rights. Therefore, instead of granting a windfall, we return Ward to the

---

[20] 180 Wash. 311, 39 P.2d 983 (1935).

[21] *Burgunder*, 180 Wash. at 314-15.

[22] *Burgunder*, 180 Wash. at 315.

[23] *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996).

[24] *Silvers*, 90 F.3d at 99.

position in which he would have been if no error had occurred.

¶21 In *Andress*, our Supreme Court clarified that after it vacated a defendant's felony murder conviction, the State may initiate any lawful proceedings that did not conflict with its decision.[25] We exercise our authority to take any action required in the interest of justice and remand to the trial court to enter judgment and sentence on the manslaughter charge.[26]

¶22 Next, Ward argues that the trial court committed error by giving a "first aggressor" or "aggressor" instruction. It is well established that " '[j]ury instructions are sufficient if they permit each party to argue his theory of the case and properly inform the jury of the applicable law.' "[27] And " '[w]here there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate.' "[28]

¶23 Ward argues that the State did not present sufficient evidence to allow a jury to find beyond a reasonable doubt that he had created his own need for self-defense. Our Supreme Court has noted that "the initial aggressor doctrine is based upon the principle that the aggressor cannot claim self-defense because the victim of the aggressive act is entitled to respond with lawful force."[29] Furthermore, "[f]or the victim's use of force to be lawful, the victim must reasonably believe he or she was in danger of imminent harm."[30]

---

[25] *Andress*, 147 Wn.2d at 616 n.5.

[26] RAP 12.2.

[27] *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (quoting *State v. Bowerman*, 115 Wn.2d 794, 809, 802 P.2d 116 (1990)).

[28] *Riley*, 137 Wn.2d at 909-10 (quoting *State v. Hughes*, 106 Wn.2d 176, 191-92, 721 P.2d 902 (1986)).

[29] *Riley*, 137 Wn.2d at 912.

[30] *Riley*, 137 Wn.2d at 912.

¶24 When considering "imminent danger" in the context of self-defense, this court noted that "it stands to reason that the imminence of the danger . . . may increase with the number of persons sharing the plan or purpose of attack."[31] In the context of analysis of a self-defense instruction, our Supreme Court affirmed that a defendant may use lawful force to defend himself "even if he is not actually in . . . danger."[32]

¶25 Ward notes that aggressor instructions are not favored.[33] He further argues that the first aggressor was Jake Jansen, not Ward. He claims that no evidence was presented from which the jury could conclude that he provoked Jansen's aggressive actions. Ward is mistaken.

¶26 Three witnesses identified Ward as the aggressor. Arletta Morrison, Jake's friend, testified that after Starr and Jake Jansen began a fistfight, Ward joined the fray by trying to hit Jake in the head with a bottle. Ward and Jansen then began to fight, according to Morrison. Similarly, Clayton Jansen, Jake's half brother, testified that after Starr and Jake had begun to fight, Ward joined in by throwing a bottle at Jake and missing. According to Clayton, the three continued to fight with their fists. Finally, Michelle McCloud, Jake's girl friend, also testified that Ward initiated the fight, but she stated that Ward started the fistfight as well as throwing the bottle.

¶27 Ward points out that these three witnesses for the State were close friends or relatives of the victim, implying that they are not credible. But his argument is of no avail because "[c]redibility determinations are within the sole province of the jury and are not subject to review."[34]

¶28 Ward also argues that it was Jake Jansen that introduced a weapon to the fight, by arming himself with a knife. But given our courts' recognition that within the

---

[31] *State v. Irons*, 101 Wn. App. 544, 557, 4 P.3d 174 (2000).

[32] *State v. Hutchinson*, 135 Wn.2d 863, 875, 959 P.2d 1061 (1998).

[33] *State v. Birnel*, 89 Wn. App. 459, 473, 949 P.2d 433 (1998).

[34] *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997).

self-defense context a person may reasonably perceive imminent danger when set upon by multiple assailants, even those who are not armed, it was not unreasonable for the court to conclude that Jansen perceived a threat of imminent danger when he found himself faced off with both Starr and Ward.

 ¶29 Ward also claims that the evidence is conflicting and, therefore, substantial evidence does not support giving the instruction. But in *State v. Cyrus*,[35] this court commented that "[t]he aggressor instruction is particularly appropriate where there is conflicting testimony as to whether the defendant or victim provoked the altercation."[36] And in *State v. Davis*,[37] our Supreme Court stated that an instruction can be given to a jury if evidence supports "the theory upon which the instruction is based" and cited for support a case where the court instructed the jury about the first aggressor doctrine even though there was conflicting evidence about who started the conflict.[38] The court did not err in giving the aggressor instruction.

 ¶30 Finally, Ward argues that he received ineffective assistance from his counsel. To prove ineffective assistance of counsel, Ward must show (1) deficient performance and (2) prejudice.[39] Ward attempts to show prejudice by proving that "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[40]

 ¶31 Ward's argument relates to the aggressor instruction and the possibility that his counsel did not sufficiently raise an objection to the instruction at trial. Even if counsel failed to effectively raise the objection, no prejudice resulted because the instruction was not given in error.

---

[35] 66 Wn. App. 502, 832 P.2d 142 (1992).

[36] *Cyrus*, 66 Wn. App. at 508-09.

[37] 119 Wn.2d 657, 835 P.2d 1039 (1992).

[38] *Davis*, 119 Wn.2d at 665.

[39] *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

[40] *Hendrickson*, 129 Wn.2d at 78.

Therefore, Ward cannot prove ineffective assistance of counsel.

¶32 We reverse and remand to the trial court to vacate Ward's conviction for felony murder. We further direct the trial court to enter judgment and sentence against Ward for first degree manslaughter.

¶33 Reversed and Remanded.

GROSSE and KENNEDY, JJ., concur.