[No. 36325-9-II.   Division Two.   October 21, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. FAULOLUA FAAGATA, JR., *Appellant*.

238

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Michelle Hyer, Deputy*, for respondent.

¶1 PENOYAR, A.C.J. — In August 2006, the State charged Faulolua Faagata, Jr., with first degree murder and second degree felony murder. A jury found Faagata guilty as charged. It also found by special verdict that Faagata was armed during the commission of the offenses and that his conduct manifested deliberate cruelty. The trial court entered judgment and sentence on the first degree murder

conviction. It then orally conditionally dismissed the second degree felony murder conviction with the understanding that should the first degree murder conviction be reversed or vacated, it could be reinstated. The trial court then imposed a 450-month exceptional sentence for the first degree murder conviction. Faagata now appeals, arguing that (1) the trial court violated double jeopardy by conditionally dismissing his second degree felony murder conviction and (2) insufficient evidence supports the jury's finding that his conduct manifested deliberate cruelty. We affirm.

## FACTS

¶2 On July 3 and the early morning hours of July 4, 2006, Jason Outler, a couple of his co-workers, and his friend Kenneth Legary were drinking at the Hob-Nob, a Tacoma restaurant and bar. Shortly before the bar closed, Legary witnessed a car pull into the alley outside the Hob-Nob. Legary later identified the driver of the vehicle as Faagata. Outler complimented Faagata on the vehicle and asked whether Faagata would give him a ride home. Outler offered Faagata money in exchange for the ride. Faagata agreed and Legary watched as the two men left together at approximately 1:30 AM.

¶3 At approximately 1:45 AM, Anna Steele, whose home was located near the intersection of North 8th and Alder in Tacoma, awoke to the sounds of a struggle taking place outside her bedroom window. Steele then heard multiple "pop[s]" and someone say, "Oh my God." 4 Report of Proceedings (RP) at 231.

¶4 William Meeks, who also lived near North 8th and Alder, was standing at his parked car that morning when he observed two people standing beside another parked car. Meeks heard the people begin to argue and saw one push the other. He then heard someone say, "Look who's got the gun now, mother fucker." 4 RP at 253. Meeks returned to his apartment. From his apartment, Meeks watched as the two people began rolling around on the ground. Within a few

minutes, Meeks heard gunfire. He observed that one man was standing and holding a gun, while the other man was on the ground. Meeks heard a total of five gun shots.

¶5 Lauren Carpenter, a guest at Meeks' home, also witnessed the altercation after someone pointed out that two men were arguing across the street from the apartment. Carpenter observed one of the men standing over the other. Carpenter then saw the man who was standing pull out a gun. She first saw the man fire three shots at the other man's body. After the first three shots, Carpenter heard the wounded man screaming in pain. She then saw the armed man move over to the wounded man, place the gun "close up to his butt," and fire another shot. 4 RP at 279. Finally, she saw the armed man, who was still leaning over the other man's body, put the gun up to the man's head and shoot. Alex Milham, Meeks' roommate, also witnessed the incident. Milham saw the two men fighting on the ground and then witnessed the armed man shoot the other man three times in the back. Milham watched as the armed man repositioned himself between shooting the other man in the buttocks and again in the head.

¶6 Additionally, James Meyer and Teresa Connick, who were sitting outside of Meyer's apartment on North 8th, witnessed the incident. Meyer and Connick watched as a car pulled up across the street and Meyer heard the driver of the vehicle say, "Damn it[,] I want my money." 4 RP at 316. He then witnessed the driver force the passenger out of the vehicle. Connick heard someone say, "Now I've got the gun" or "I've got the gun now." 4 RP at 349. Meyer subsequently called 911 and, while he was on the phone, he too heard the driver indicate that he had a gun. Meyer yelled to the two men that the police had been called and heard one of the men say, "Come on, man. Didn't you hear him? The police have been called. Let's just stop. . . . Don't worry about it; you're the man. Let's just go." 4 RP at 317. Meyer then witnessed the armed man shoot the other man three times.

¶7 Outler ultimately died at the scene. A subsequent autopsy revealed that he was shot five times: twice in the back, twice in the buttocks, and once in the head.

¶8 A few days later, on July 6, Faagata went to the Tacoma Police Department.[1] When Detective David DeVault interviewed him, Faagata admitted that he was at the Hob-Nob on July 3 and 4 and indicated that Outler had approached him outside of the bar. Faagata claimed that Outler offered him $80 in exchange for a ride home. Outler gave Faagata some cash, which Faagata threw on the dash of his car. When the men arrived at Outler's destination, Faagata counted the money and discovered that Outler had only given him $15 or $16. Faagata explained that after he confronted Outler, the two men began to argue over the money. He then claimed that Outler produced a gun, which went off while the men wrestled on the ground.[2]

¶9 On August 16, 2006, the State charged Faagata by amended information with first degree murder under RCW 9A.32.030(1)(a) (count I) and second degree felony murder under RCW 9A.32.050(1)(b) (count II). Both counts alleged that Faagata was armed with a firearm during the commission of the offense and that Faagata's conduct manifested deliberate cruelty. On March 21, 2007, both parties appeared for trial. The trial court held a CrR 3.5 hearing and ruled that Faagata's statements were admissible.

¶10 On April 2, 2007, a jury found Faagata guilty as charged. The jury also found by special verdict that Faagata was armed during the commission of the offenses and that his conduct manifested deliberate cruelty. On May 4, 2007, the trial court entered judgment and sentence for the first

---

[1] Faagata later testified that his brothers told him that the police were looking for him and that he should "talk to the police before they [came] looking for [him]." 6 RP at 647.

[2] Faagata later testified that after Outler produced the gun and the gun "went off," he tackled Outler and the gun "went off" again. 6 RP at 646. He then testified that he stood up and shot Outler three times before fleeing the scene. He explained, "I don't remember [why I shot him]. Because [ ] I have an angry temper as to what happened that night . . . and [I] also had a couple of drinks." 6 RP at 646-47.

degree murder conviction.[3] The trial court then orally conditionally dismissed the second degree felony murder conviction, stating:

> Well, I'm going to dismiss Count II, but I'm going to do it conditionally. I'm going to follow [the Court of Appeals' decision in *State v. Womac*, 130 Wn. App. 450, 123 P.3d 528 (2005), *rev'd in part*, 160 Wn.2d 643, 160 P.3d 40 (2007)]. [T]hat's kind of new law, but it does make a certain amount of sense to me procedurally to do that. We have a jury that entered a conviction, and I don't think that the jury's finding should be a nullity. I think it's entitled to some weight. So I'm going to dismiss it conditionally with the understanding that should Count I be reversed or something happened [sic] with that, collateral attack, it can be reinstated, and, of course, if that were ever to happen, then there would be entirely a new set of appeal rights starting at that time.

RP (May 4, 2007) at 24. The trial court then imposed a 450-month exceptional sentence[4] for the first degree murder conviction. Faagata now appeals.

## ANALYSIS

### I. DOUBLE JEOPARDY

¶11 Citing the Washington Supreme Court's decision in *Womac*, 160 Wn.2d 643,[5] Faagata argues that his con-

---

[3] Both parties note that the trial court did not enter findings of fact or conclusions of law. Citing *In re Marriage of Griffin*, 114 Wn.2d 772, 791 P.2d 519 (1990), Faagata argues that we may look to the trial court's oral opinion to determine the basis for the trial court's resolution of the issue. Citing *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 313, 979 P.2d 417 (1999), the State contends that we should remand for entry of findings of fact and conclusions of law. Because the trial court's oral opinion provides a sufficient basis for appellate review, however, we need not remand for entry of written findings of fact and conclusions of law.

[4] The trial court sentenced Faagata to 300 months, plus an additional 90 months for deliberate cruelty and 60 months for the firearm enhancement.

[5] While the present case was on appeal, the Supreme Court issued its decision in *State v. Schwab*, 163 Wn.2d 664, 185 P.3d 1151 (2008), filed June 12, 2008. In that case, a jury convicted the defendant of first degree manslaughter and second degree felony murder predicated upon assault. The trial court sentenced him on both counts. The Court of Appeals vacated the manslaughter conviction on double

victions for both first degree murder and second degree felony murder violate double jeopardy and require that his second degree felony murder conviction be vacated. The State, also citing *Womac*, responds that although the jury found Faagata guilty of both first degree murder and second degree felony murder, the judgment and sentence is silent as to his second degree felony murder conviction; therefore, the trial court did not violate double jeopardy.[6] We review questions of law de novo. *Womac*, 160 Wn.2d at 649 (citing *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996)).

■ ■ ¶12 Article I, section 9 of the Washington State Constitution provides the same protection against double jeopardy as the Fifth Amendment to the federal constitution. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). Both the state and federal double jeopardy clauses protect against multiple punishments for the same offense, as well as against a subsequent prosecution for the same offense after acquittal or conviction. *Orange*, 152 Wn.2d at 815 (citing *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995)). Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense. *Orange*, 152 Wn.2d at 815 (citing *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995)).

¶13 Washington follows the "same evidence" rule. *Calle*, 125 Wn.2d at 777. "The same evidence rule controls 'unless there is a clear indication that the legislature did not intend

---

jeopardy grounds and, after the Supreme Court ruled that a felony murder conviction could not be predicated upon assault, ordered that the murder conviction be vacated. The trial court reinstated the manslaughter conviction, which both the Court of Appeals and the Supreme Court ultimately affirmed. Although *Schwab* discusses the court's decision in *Womac*, it is procedurally unlike the present case. Furthermore, both of the defendant's convictions in that case were entered on the judgment and sentence. Therefore, *Schwab* does not change our analysis with respect to this issue. *See Schwab*, 163 Wn.2d 664.

[6] The State concedes that the defendant cannot be sentenced for both first degree murder and second degree felony murder and that the trial court improperly relied on our decision in *Womac*.

to impose multiple punishment.' " *Womac*, 160 Wn.2d at 652 (quoting *State v. Gohl*, 109 Wn. App. 817, 821, 37 P.3d 293 (2001)). The defendant's double jeopardy rights are violated if he is convicted of offenses that are identical both in fact and in law. *Calle*, 125 Wn.2d at 777. " '[O]ffenses are not constitutionally the same if there is any element in one offense not included in the other and proof of one offense would not necessarily prove the other.' " *Womac*, 160 Wn.2d at 652 (alteration in original) (quoting *State v. Trujillo*, 112 Wn. App. 390, 410, 49 P.3d 935 (2002)). Washington courts, however, have occasionally found a violation of double jeopardy despite a determination that the offenses clearly contained different legal elements. *Womac*, 160 Wn.2d at 652.

■■ ¶14 In this case, the jury found that Faagata committed both first degree murder and second degree felony murder. A person commits first degree murder when with premeditated intent he causes the death of another. RCW 9A.32.030(1)(a). A person commits second degree felony murder when he commits or attempts to commit any felony, including assault, and in the course of and in furtherance of the felony, he causes the death of another. RCW 9A.32.050(1)(b). Here, the trial court entered judgment and sentence on only the first degree murder conviction. In denying Faagata's motion to dismiss the second degree murder conviction, the trial court relied on our decision in *Womac*, 130 Wn. App. 450. A few weeks after Faagata was sentenced, the Washington Supreme Court issued its decision in *Womac*, which affirmed in part and reversed in part our decision. *See* 160 Wn.2d at 664.

¶15 In that case, Womac was charged and convicted of homicide by abuse (count I), second degree felony murder (count II), and first degree assault (count III) for the death of his four-month-old son. The trial court entered judgment on all counts but imposed an exceptional sentence on count I only. The trial court denied Womac's motion to dismiss counts II and III and left both on his record but to avoid violating double jeopardy provisions, did not impose sen-

tences on either count. We affirmed the conviction for count I but remanded for resentencing within the standard range on that count. Additionally, we directed the trial court to conditionally dismiss counts II and III, allowing for reinstatement should count I later be reversed, vacated, or set aside. *Womac*, 160 Wn.2d at 647.

¶16 The Supreme Court ultimately affirmed our remand for resentencing on count I but reversed the order conditionally dismissing counts II and III. Finally, it directed the trial court to vacate Womac's convictions for felony murder and first degree assault. *Womac*, 160 Wn.2d at 649. In making this determination, the court first noted that Womac remained exposed to danger as three separate convictions (arising from a single offense) remained on his record even after the trial court determined that sentencing on all three counts would violate double jeopardy. *Womac*, 160 Wn.2d at 650. In response to the State's argument that Womac's three convictions should stand since he was sentenced for count I only, the Supreme Court stated:

> The trial judge also determined double jeopardy concerns are implicated *only when a defendant receives more than one sentence*. This determination is incorrect. That Womac received only one sentence is of no matter as he still suffers the punitive consequences of his convictions.

*Womac*, 160 Wn.2d at 656 (citation omitted). The court explained that Womac's convictions for counts II and III, for example, would count in his offender score should he be charged with another crime in the future. *Womac*, 160 Wn.2d at 656. Additionally, it noted that the presence of multiple convictions on one's record may impact parole eligibility, may be used to impeach the defendant's credibility, and " 'certainly carries the societal stigma accompanying any criminal conviction.' " *Womac*, 160 Wn.2d at 657 (quoting *Ball v. United States*, 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985)).

¶17 In this case, the State argues that the trial court's oral ruling is irrelevant, as the judgment and sentence is

silent regarding the second degree felony murder conviction. The State contends that the present case is similar to *State v. Ward*, 125 Wn. App. 138, 104 P.3d 61 (2005), in which the trial court entered judgment and sentence for only one of the charges. Faagata contends that the *Womac* court distinguished *Ward* on two grounds: (1) unlike Ward, Womac's judgment included all his convictions and (2) unlike Ward (who was charged in the alternative), Womac was charged with separate offenses. Faagata emphasizes that, like Womac, he was charged with separate offenses. We recently discussed the Supreme Court's *Womac* decision in *State v. Turner*, 144 Wn. App. 279, 182 P.3d 478 (2008).[7]

¶18 In *Turner*, the State charged the defendant in the alternative with first degree assault and first degree robbery. A jury convicted Turner of second degree assault and first degree robbery. Turner then moved to have the assault conviction merge with the robbery conviction under *State v. Freeman*, 153 Wn.2d 765, 778, 108 P.3d 753 (2005), and the State agreed. The State asked the trial court to sign an order indicating that (1) a jury found Turner guilty of both first degree robbery and second degree assault, (2) the second degree assault charge merged into the robbery charge, and (3) the trial court would vacate the assault charge for purposes of sentencing. The State also asked the trial court, however, to indicate that the conviction for assault was valid and could be utilized for sentencing if the Court of Appeals set aside the robbery conviction. The trial court ultimately signed the order. *Turner*, 144 Wn. App. at 281.

¶19 On appeal, Turner asked this court to vacate the assault conviction. Our commissioner entered a ruling affirming judgment but after this court denied Turner's motion to modify the commissioner's ruling, the Washington Supreme Court remanded for reconsideration in light of *Womac*. *Turner*, 144 Wn. App. at 281. In determining whether there was a double jeopardy violation, we stated:

---

[7] A petition for review of *Turner* was filed on May 23, 2008. The Supreme Court will consider whether it will grant review on February 3, 2009.

*Womac* makes it clear that in order to avoid double jeopardy, a trial court must vacate a charge that it has reduced to judgment but chooses not to sentence. That is not the case here because the trial court never reduced Turner's second degree assault conviction to judgment.

*Turner*, 144 Wn. App. at 282 (citation omitted). After discussing the facts in both *Ward* and *Trujillo*, 112 Wn. App. 390,[8] we then stated:

The *Womac* court noted that the defendant in that case was not charged in the alternative and then *based its decision to vacate the conviction on the fact that the trial court reduced the defendant's convictions to judgment*. As such, the *Womac* court determined that the remaining counts [in that case] violated double jeopardy and . . . ordered the trial court to vacate both.

*Turner*, 144 Wn. App. at 283 (emphasis added) (citation omitted). We then concluded that because the trial court did not reduce Turner's second degree assault conviction to judgment and did not sentence him for the conviction (or include any information regarding this conviction in his judgment and sentence), Turner's second degree assault conviction did not subject him to double jeopardy. Accordingly, we declined to vacate Turner's second degree assault conviction. *Turner*, 144 Wn. App. at 283.

¶20 Although the State did not charge Faagata in the alternative,[9] the jury in this case—like the juries in *Ward*, *Trujillo*, and *Turner*—found Faagata guilty on all counts.

---

[8] In *Trujillo*, a jury convicted four defendants of first degree assault and, in the alternative, first degree attempted murder. *Turner*, 144 Wn. App. at 283 (citing *Trujillo*, 112 Wn. App. at 408-09). We explained that in *Trujillo*, this court reasoned that because the trial court did not reduce the verdict for first degree assault to judgment, it did not subject the defendants to any future jeopardy. *Turner*, 144 Wn. App. at 283.

[9] The State argues, and we agree, that the difference between charging a defendant in the alternative and charging a defendant for separate offenses is insignificant for purposes of double jeopardy. Ultimately, juries are required to return verdicts on all counts, and trial courts, where appropriate, are required to either merge convictions or enter judgment and sentence on only one of multiple convictions so as to avoid double jeopardy. So while charging in the alternative versus charging for separate offenses is technically different, the practical result of doing so in this context is the same.

Furthermore, the trial court in this case—like the trial courts in *Ward*, *Trujillo*, and *Turner*—entered judgment and sentence for one of Faagata's counts. Faagata's judgment and sentence remained silent as to the second degree felony murder conviction. Consistent with these cases, we decline Faagata's request to vacate his second degree murder conviction as no double jeopardy violation occurred.

¶21 Furthermore, we note that the concerns addressed in *Womac* are inapplicable to the present case. *See Womac*, 160 Wn.2d at 656-57. First, should Faagata commit another offense in the future, his second degree felony murder conviction will not be factored into his offender score, as prior offenses which are found to encompass the same criminal conduct are counted as one offense under RCW 9.94A.525(5)(a)(i). Second, because parole no longer exists in Washington, the potential impact of Faagata's second conviction on parole eligibility is irrelevant. Lastly, we find that the court's concerns regarding credibility impeachment and societal stigmas are less pertinent in the present case. It is unlikely that Faagata, who already has been convicted of and sentenced for first degree murder, will be even more exposed to the aforementioned "dangers" by virtue of his simultaneous second degree felony murder conviction alone. For these and the above reasons, we affirm.

II. EXCEPTIONAL SENTENCE FOR DELIBERATE CRUELTY

¶22 Faagata argues that the jury's deliberate cruelty finding is unsupported by the evidence and as a matter of law cannot support the trial court's exceptional sentence. Thus, Faagata contends, we should remand for resentencing within the standard range. We disagree.

¶23 The trial court may impose an exceptional sentence if it finds that there are substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A.535. Deliberate cruelty during the commission of the offense is included in the list of factors that may support an exceptional sentence. RCW 9.94A.535(3)(a). The aggravating

factor of deliberate cruelty must be determined by a jury under the Sixth Amendment. RCW 9.94A.537(3); *State v. Borboa*, 157 Wn.2d 108, 118, 135 P.3d 469 (2006) (citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)).

■ ¶24 "Deliberate cruelty" is defined as " 'gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself.' " *State v. Copeland*, 130 Wn.2d 244, 296, 922 P.2d 1304 (1996) (quoting *State v. Scott*, 72 Wn. App. 207, 214, 866 P.2d 1258 (1993)). The conduct must be significantly more serious or egregious than typical in order to support an exceptional sentence. *Scott*, 72 Wn. App. at 214 (citing *State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987)). It must involve cruelty of a kind not usually associated with the commission of the offense in question. *State v. Crane*, 116 Wn.2d 315, 334, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991).

■ ¶25 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220, 616 P.2d 628 (1980). When the sufficiency of evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Credibility determinations are for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75 (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

¶26 In this case, the jury found by special verdict that Faagata's conduct during the commission of the crimes manifested deliberate cruelty to the victim. Based on this finding, the trial court imposed an exceptional sentence of 450 months for Faagata's first degree murder conviction. Faagata argues that the present case is analogous to *State v. Serrano*, 95 Wn. App. 700, 977 P.2d 47 (1999), where Division Three of this court held that a finding of deliberate cruelty was not justified where the defendant shot the victim five times. In *Serrano*, however, the defendant shot the victim in the back five times. 95 Wn. App. at 711. In determining that the multiple gunshot wounds in that case did not manifest deliberate cruelty, however, the Division Three noted:

> Some Washington cases have upheld exceptional sentences on the basis of the number of wounds inflicted. In each of those cases, however, the sheer number of wounds demonstrated *a cruelty not usually associated with the offenses. Mr. Serrano shot [the victim] five times. This fact itself does not suggest he gratuitously inflicted pain as an end in itself.*

*Serrano*, 95 Wn. App. at 713 (emphasis added) (citations omitted).

¶27 Although Faagata also shot Outler a total of five times, the locations of the wounds and the manner in which Faagata shot Outler suggest that he gratuitously inflicted pain as an end in itself and that his conduct involved cruelty of a kind not usually associated with first degree murder. Unlike the defendant in *Serrano*, Faagata shot Outler twice in the back, waited a few seconds, shot him twice in the buttocks—in close proximity to his genitals—and then waited a few more seconds before shooting him directly in the head. Carpenter's testimony reveals that Outler was conscious and screaming in pain after Faagata shot him twice in the back. Furthermore, other eyewitness testimony reveals that Faagata actually repositioned himself before shooting Outler in the buttocks. This evidence supports the jury's finding that Faagata gratuitously inflicted pain as an end in itself—to hurt, humiliate,

and embarrass Outler—and that this violence was significantly more egregious than typical of first degree murder. We affirm Faagata's exceptional sentence.

¶28 Faagata's arguments that the trial court violated double jeopardy by conditionally dismissing his second degree felony murder conviction and that insufficient evidence supports the jury's finding that his conduct manifested deliberate cruelty therefore fail and we affirm.

ARMSTRONG and HUNT, JJ., concur.

Review granted at 165 Wn.2d 1041 (2009).