[Nos. 56206-1-I; 43255-9-I.   Division One.   August 21, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. DALE LESLIE SCHWAB, JR., *Appellant*.

*Nancy P. Collins* and *Jason B. Saunders* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney,* and *Seth A. Fine, Deputy,* for respondent.

¶1 AGID, J. — In 1997, Dale Schwab was convicted of first degree manslaughter and second degree felony murder arising out of the same homicide. In 2000, we vacated his manslaughter conviction on double jeopardy grounds. In 2005, we granted Schwab's personal restraint petition (PRP) vacating his felony murder conviction in light of *In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002), *superseded by statute*, RCW 9A.36.021(1)(a), *as recognized in State v. Gamble*, 154 Wn.2d 457, 114 P.3d 646 (2005), and *In re Personal Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004), which held that felony murder charges could not be based on assault as the predicate crime. On remand, the trial court entered an order reinstating his original manslaughter conviction.

¶2 Schwab challenges that order on the ground that the law of the case doctrine and double jeopardy prohibit the trial court from reinstating a previously-vacated conviction. He asserts that the trial court lacked authority to reinstate a conviction which has been vacated by an appellate court. He also asks the court to deny the State's motion to recall the mandate we issued in 2000 because the motion is untimely, the original mandate was not in error at the time the decision was made, and relitigating these issues contravenes the strong public policy favoring finality of judgments.

¶3 When we remanded Schwab's PRP for "further lawful proceedings consistent with *Andress* and *Hinton*," we authorized the trial court to act in any lawful manner necessary to resolve any remaining issues in Schwab's case on remand. Schwab's manslaughter and felony murder convictions were inextricably linked. Thus, when his felony murder conviction became invalid after *Andress*, our direction

on remand gave the trial court authority to reinstate Schwab's manslaughter conviction.

¶4 Accordingly, we need not recall the mandate issued in 2000. But if it were necessary, we hold that RAP 12.9(b) permits us to do so to correct the inadvertent mistake that arose after the decisions in *Andress* and *Hinton* and RAP 12.3(d) empowers us to change our earlier double jeopardy decision under RAP 2.5(c)(2) when the interests of justice so require.

¶5 We affirm the trial court's order reinstating Schwab's manslaughter conviction.

## FACTS

*1997 Conviction*

¶6 On December 22, 1997, Dale Schwab and Aaron Beymer assaulted Ernest Sena, took the money from Sena's pockets, and placed his unconscious body on nearby railroad tracks, covered with carpet and debris.[1] Minutes later, a train came through and severed Sena's body.[2] Schwab was charged with first degree premeditated murder and second degree felony murder predicated on second degree assault and/or first degree theft.[3] At trial, the jury was instructed on first degree manslaughter as a lesser included offense of first degree murder. The jury hung on the first degree murder charge but found Schwab guilty of second degree felony murder and first degree manslaughter as lesser included offenses.[4] The court sentenced him to concurrent standard range sentences on both convictions.[5]

*1999 Direct Appeal*

¶7 In *State v. Schwab*, we held that Schwab's convictions for both second degree felony murder and first degree man-

---

[1] *State v. Schwab*, 98 Wn. App. 179, 181, 988 P.2d 1045 (1999).

[2] *Id.*

[3] *Id.* at 180.

[4] *Id.*

[5] *Id.*

slaughter violated double jeopardy because the legislature did not intend to provide multiple punishments for a single homicide.[6] Accordingly, we vacated Schwab's conviction for first degree manslaughter because it was the lesser of the two convictions.[7] On March 13, 2000, this court issued a mandate to the Snohomish County Superior Court to conduct proceedings in accordance with its decision in *State v. Schwab*. On April 13, 2000, the Snohomish County Superior Court entered an order amending judgment and sentence vacating the first degree manslaughter conviction.

## 2003 Personal Restraint Petition

¶8 In 2002, the Washington Supreme Court decided *Andress*, which held that second degree felony murder predicated on assault, as defined in former RCW 9A.36.021(1)(a) (1997), was not a crime.[8] On May 9, 2003, Schwab filed a motion to modify and correct judgment and sentence in Snohomish County Superior Court, arguing that the court must vacate his second degree felony murder conviction after *Andress*. The superior court transferred the motion to the Court of Appeals to consider as a personal restraint petition.

¶9 In 2004, the Washington Supreme Court decided *Hinton*, holding that *Andress* applied retroactively.[9] On January 6, 2005, this court granted Schwab's PRP, remanding his case to the Snohomish County Superior Court "for further lawful proceedings consistent with *Andress* and *Hinton*."[10]

---

[6] 98 Wn. App. 179, 180, 988 P.2d 1045 (1999).

[7] *Id.* at 188-89.

[8] *Andress*, 147 Wn.2d at 604.

[9] *Hinton*, 152 Wn.2d 853.

[10] On December 6, 2004, the court sent a letter to the Snohomish County Prosecutor's Office to inquire whether the prosecutor's office would be filing a formal response to the petition. The State did not file a formal response, but the prosecutor responded by letter to the commissioner, stating:

> The murder conviction was based on felony murder, with a predicate of second degree assault. Consequently, the State concedes that this conviction

*2005 Remand Proceedings*

¶10 On February 24, 2005, the Snohomish County Superior Court again heard Schwab's case on remand. At this hearing, the State asked the court to reimpose sentence for first degree manslaughter, arguing that we had authorized it on remand to act in any "lawful" manner consistent with *Andress* and *Hinton*. At the hearing, the court rejected the State's reliance on *State v. Ward*, 125 Wn. App. 138, 104 P.3d 61 (2005), as support for its motion to reinstate Schwab's manslaughter conviction, ordered the prosecutor to obtain direction from the Court of Appeals, and scheduled a hearing.

¶11 On April 14, the State informed the trial court it had filed a motion to recall the mandate[11] we issued in 2000 after ruling that Schwab's first degree manslaughter conviction be vacated on double jeopardy grounds. The State argued the court had authority to reinstate Schwab's manslaughter conviction because our reasoning in *State v. Schwab* no longer applied now that Schwab's second degree felony murder conviction had been vacated.[12] The superior court reinstated Schwab's manslaughter conviction.[13] In its oral ruling, the court stated:

> It seems to me I have an obligation, if I can, to exercise my authority to take any action that I'm allowed to in the interest of justice. In my view, justice is people being held accountable for what they have committed. In this case, Mr. Schwab could

should be vacated pursuant to *Andress* and *Hinton*. Once this is accomplished, there will no longer be any double jeopardy bar to punishment for first degree manslaughter, so that conviction should be reinstated.

There may also be issues concerning whether any additional charges can be filed against the defendant. I assume that these issues will be open for the trial court to resolve on remand.

[11] *State v. Schwab*, No. 43255-9-I (Wash. Ct. App. Mar. 13, 2000).

[12] Schwab told the court it had three options: (1) release him because his conviction had been vacated, (2) "overrule" the Court of Appeals decision and resentence him based on the original first degree manslaughter conviction, or (3) continue the case and permit the State to seek redress in the Court of Appeals.

[13] A certificate of finality was entered for Schwab's personal restraint petition on February 25, 2005.

not have committed a murder in the second degree, felony murder. Mr. Schwab did commit, apparently, based on the jury's finding, a manslaughter. Manslaughter was taken away because, at the time that decision was made, his felony murder conviction was legitimate.

It has now been determined his felony murder conviction is not legitimate and has been vacated, leaving me in the position of believing the right thing to do, what I have been, in my view, directed by the Court of Appeals to do, and the honest and just thing to do, is to reinstate the manslaughter conviction and impose sentence thereon; and I am prepared to do so.

■ ¶12 On April 29, 2005, the Snohomish County Superior Court sentenced Schwab to 194 months, the high end of the standard sentencing range for first degree manslaughter. On June 27, 2005, this court entered an order consolidating Schwab's appeal of his manslaughter judgment and sentence with the State's motion to recall the mandate.[14] Our review is de novo.[15]

## DISCUSSION

*Reinstatement of Vacated Conviction*

¶13 Schwab argues double jeopardy and the law of the case doctrine prohibit a court from reinstating his vacated conviction and prevent a lower court from reexamining issues which have been decided by a reviewing court. He also challenges the authority on which the State relies on the ground that the cases do not involve a trial court's decision to reinstate a conviction an appellate court has previously vacated.

¶14 The State argues that reinstating Schwab's manslaughter conviction simply restored him to the same position in which he would have been had no error occurred in the first place. It asserts double jeopardy merely protected

---

[14] Order Granting Consolidation, *State v. Schwab*, No. 56206-1-I, consolidated with No. 43255-9-I (Wash. Ct. App. June 27, 2005).

[15] *State v. Johnston*, 100 Wn. App. 126, 137, 996 P.2d 629, *review denied*, 141 Wn.2d 1030 (2000); *State v. Knutson*, 88 Wn. App. 677, 680, 946 P.2d 789 (1997).

Schwab from multiple punishments arising out of the same crime but that the doctrine does not prohibit the court from reinstating his manslaughter conviction because the jury's guilty verdict on that lesser included crime was always valid.

¶15 The State relies primarily on three cases to support its position, *State v. Ward*,[16] a Washington case, and two out-of-state cases, *Byrd v. United States*[17] and *Taflinger v. State*.[18] In *Ward*, the defendant was found guilty of both second degree felony murder predicated on assault and first degree manslaughter.[19] The court entered judgment and sentence on the second degree felony murder conviction and denied Ward's motion to vacate the first degree manslaughter conviction.[20] On appeal, Ward sought to have the felony murder conviction vacated in conformance with *Andress* and argued that his manslaughter conviction could not be revived.[21] Because the superior court did not enter judgment on the manslaughter charge, this court held that "[e]ntering judgment and sentence [for manslaughter] against him now is not a violation of his constitutional rights. . . . [I]nstead of granting a windfall, we return Ward to the position in which he would have been if no error had occurred."[22] It then remanded the case to the trial court to do so.[23]

¶16 In *Byrd*, the Court of Appeals for the District of Columbia authorized the lower court to decide which conviction to vacate on remand to cure a multiple punish-

---

[16] 125 Wn. App. 138.

[17] 500 A.2d 1376 (D.C. 1985), *adhered to in part on reh'g en banc*, 510 A.2d 1035 (D.C. 1986).

[18] 698 N.E.2d 325 (Ind. Ct. App. 1998).

[19] *Ward*, 125 Wn. App. at 142.

[20] *Id.*

[21] *Id.* at 144.

[22] *Id.* at 146-47.

[23] *Id.*

ment problem.[24] In a footnote, the court stated the trial court "should consider favorably a government motion to reinstate the vacated murder conviction" if the unvacated conviction were later successfully collaterally attacked.[25] In *Taflinger*, the trial court reinstated a conviction it had dismissed on double jeopardy grounds before sentencing.[26] The appellate court affirmed, holding that reinstating the jury's verdict did not violate double jeopardy. The vacated conviction was an existing valid verdict which made a second trial for the crime unnecessary.[27] Collectively, these cases stand for the proposition that reinstating a valid conviction which had previously been vacated on double jeopardy grounds is permissible when a court later rules that the unvacated conviction is invalid. That principle applies equally here.

¶17 In 2000, we ordered the lower court to vacate Schwab's valid manslaughter conviction on double jeopardy grounds, and on remand the lower court complied with this order.[28] But when we vacated Schwab's felony murder conviction in 2005 because *Andress* and *Hinton* declared the conviction invalid, the basis for our original double jeopardy holding in *Schwab* disappeared. Without the felony murder conviction, Schwab could no longer be punished twice for the same crime. When the trial court reinstated Schwab's original manslaughter conviction, which was valid when the jury returned its verdict, the court merely restored him to the same position he would have been in if the error—charging and convicting him of felony murder—had not occurred.[29]

---

[24] *Byrd*, 500 A.2d at 1389 (holding "we would take the view that we should decline to mandate which of appellant's first-degree murder convictions must be vacated, but leave it to the trial court on remand to cure the multiple punishment problem, so that it may implement its original sentencing plan").

[25] *Id.* at 1389 n.16.

[26] *Taflinger*, 698 N.E.2d at 328.

[27] *Id.*

[28] *Schwab*, 98 Wn. App. at 190.

[29] *See Ward*, 125 Wn. App. at 147.

¶18 The double jeopardy doctrine does not preclude reinstating Schwab's manslaughter conviction because it was vacated solely to prevent double punishment for the same crime, not because the jury's verdict was somehow in error. The State may bring multiple charges and the jury may convict on all charged counts without violating double jeopardy.[30] It is only when the trial court enters judgment and imposes sentence on more than one conviction for the same crime that double jeopardy is implicated. When we vacate a conviction on double jeopardy grounds, the validity of the jury's verdict of guilty on the vacated charge remains unimpaired.[31]

¶19 Nor is the law of the case doctrine implicated under these circumstances. The law of the case is a doctrine derived from the common law and RAP 2.5(c)(2) and is intended to promote finality and efficiency.[32] Generally it stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in later stages of the same litigation.[33] RAP 2.5(c)(2) limits the law of the case doctrine:

> [t]he appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

---

[30] *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005) ("The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct in a single proceeding." (citing *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997))).

[31] *Id.*at 770-71 ("Courts may not, however, enter multiple convictions for the same offense without offending double jeopardy." (citing *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983))).

[32] *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

[33] *Id.* (citing BLACK'S LAW DICTIONARY 1336-37 (8th ed. 2004)); *see also In re Estate of Black*, 153 Wn.2d 152, 170, 102 P.3d 796 (2004).

One exception to applying the law of the case arises when there has been an intervening change in the law.[34] That is the case here. We vacated Schwab's manslaughter conviction on grounds that no longer exist, namely, that Schwab's sentences for multiple convictions violated double jeopardy. Since that time, one of those convictions, second degree felony murder predicated on assault, became invalid when the Supreme Court decided *Andress* and *Hinton*. Because the law of this case has changed in a way that invalidates our decision in *State v. Schwab*, the doctrine does not apply.

¶20 Schwab argues the trial court lacked authority to reinstate his manslaughter conviction. Superior courts must strictly comply with directives from an appellate court which leave no discretion to the lower court.[35] But appellate courts often resolve cases on grounds that do not address every issue a trial court must decide on remand. Thus, when we remand "for further proceedings" or instruct a trial court to enter judgment "in any lawful manner" consistent with our opinion, we expect the court to exercise its authority to decide any issue necessary to resolve the case on remand.[36] Schwab's felony murder and manslaughter convictions were based on the same crime and were inextricably linked. The trial court's order reinstating his manslaughter conviction was proper given our direction on remand and the windfall he would otherwise have received after *Andress* and *Hinton*. The trial court was merely returning Schwab "to the position in which he would have been if no error had occurred."[37]

---

[34] *Roberson*, 156 Wn.2d at 42 (concluding that law of case did not preclude trial court from reconsidering whether plaintiff had a cause of action when there has been an intervening United States Supreme Court decision (citing *Crane Co. v. Am. Standard, Inc.*, 603 F.2d 244, 249 (2d Cir. 1979))).

[35] *Harp v. Am. Sur. Co. of N.Y.*, 50 Wn.2d 365, 368, 311 P.2d 988 (1957).

[36] *See* RAP 12.2.

[37] Schwab also argues that if his manslaughter conviction is reinstated, all issues concerning this conviction that were unaddressed in the 2000 appeal are revived. We need not address this issue because Schwab may file an appeal from his manslaughter conviction now that it has been reinstated.

*Recall of Mandate*

¶21 On April 20, 2005, the State filed a motion to recall the mandate, asserting RAP 12.9(b) permits the court to recall its mandate to correct an "inadvertent mistake."

¶22 Schwab contends this court cannot change or modify its decision in his 2000 appeal because RAP 12.9 does not allow us to recall the mandate if the decision was correct when entered and not induced by fraud. He argues the State's motion is neither timely because of the six year lapse between his original appeal nor "reasonable" under RAP 12.9(c) or RCW 10.73.090. He asserts the law of the case doctrine prevents us from reconsidering questions decided by a different panel on the same case. Finally, he urges us to deny the State's motion because the public policy in favor of finality outweighs the competing policy of reaching the merits in every case, even where there are extraordinary circumstances.

¶23 In its motion, the State argues that the court correctly decided *State v. Schwab* at the time it was entered but the unforeseen holdings of *Andress* and *Hinton* resulted in an inadvertent mistake. It also asserts that its motion is timely because there was no basis for the motion until February 25, 2005, when we issued our certificate of finality vacating Schwab's felony murder conviction. At oral argument, the State apparently abandoned its motion to recall the mandate, arguing that the trial court had the authority to reinstate Schwab's conviction and that recalling the mandate is unnecessary.

¶24 Under RAP 12.7(a), the Court of Appeals generally loses its power to change or modify its decision once it has issued a mandate, but RAP 12.9(c) permits us to recall our mandate within a "reasonable time" if necessary to correct an inadvertent mistake or remedy a fraud. And, as we said earlier, RAP 12.7(d) also allows us to change a decision when RAP 2.5(c)(2) applies.

¶25 Because we hold that the trial court had authority to reinstate Schwab's manslaughter conviction, we need not

recall our mandate. But under the circumstances of this case, we could recall the mandate under RAP 12.7(d) and 2.5(c)(2). The change in the law occasioned by *Andress* and *Hinton* is such that our opinion of the law today is clearly different from what it was when we decided Schwab's direct appeal in 2000.[38] After *Andress* and *Hinton*, there simply is no double jeopardy problem because there can be only one conviction and sentence for the crime Schwab committed.

¶26 Nor is the State's motion untimely because the Supreme Court's decision in *Andress* was not foreseeable by any court or party involved in this case. While several years have lapsed, the State brought its motion in a timely manner under the circumstances by filing it immediately after we granted Schwab's personal restraint petition and vacated the second degree felony murder conviction based on *Andress* and *Hinton*.

¶27 Under *Hinton*, the ruling in *Andress* applies retroactively, and our original ruling in Schwab's 2000 direct appeal is now in error. Reinstating Schwab's manslaughter conviction is necessary in order to assure that his crime does not go unpunished.[39] This is clearly a circumstance in which we are authorized to "review the propriety of [our] earlier decision . . . where justice would best be served."[40] While the policy in favor of finality is strong, given the evolution of the law and our unforeseeable error in vacating the manslaughter conviction on double jeopardy grounds, we have authority to recall the mandate in the interests of justice under RAP 2.5(c)(2).

¶28 We affirm.

APPELWICK, C.J., and BAKER, J., concur.

Review granted at 160 Wn.2d 1017 (2007).

---

[38] *See* RAP 2.5(c)(2).

[39] This is consistent with one of the goals of the Sentencing Reform Act of 1981, chapter 9.94A RCW, which is to "[p]romote respect for the law by providing punishment which is just." RCW 9.94A.010(2).

[40] RAP 2.5(c)(2).