[Nos. 36169-4-I; 35939-8-I. Division One. August 11, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. LIONEL
BERRYSMITH, *Appellant.*

*In the Matter of the Personal Restraint of* LIONEL
BERRYSMITH, *Petitioner.*

*Richard R. Tassano* and *Thomas M. Kummerow* of *Washington Appellate Project*, for appellant/petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Francis D. Zavatsky, Deputy*, for respondent.

270

KENNEDY, J. — Following an in camera hearing held outside Lionel Berrysmith's presence on the day that his jury trial for delivery of cocaine was scheduled to begin, Berrysmith's court-appointed attorney was permitted to withdraw on the ground that he could not dissuade Berrysmith from perjuring himself on the witness stand. In both his direct appeal and his personal restraint petition, Berrysmith contends that the in camera hearing was a critical stage of the proceedings because the motion to withdraw required the resolution of disputed facts, i.e., whether Berrysmith truly intended to commit perjury, and because the speedy trial expiration date was at hand so that Berrysmith was forced to choose between continuing his trial beyond the expiration date or representing himself. Berrysmith also contends that the court's decision to allow the attorney to withdraw was based upon insufficient evidence that Berrysmith intended to commit perjury so that the court erred both in allowing counsel to withdraw and by continuing the trial past the CrR 3.3 speedy trial expiration date to allow new counsel time to prepare for trial. We conclude that withdrawal of counsel in these circumstances is a matter governed by ethical standards and is, therefore, a matter of law. Because the court was not required to decide whether Berrysmith actually intended to commit perjury, but rather whether his counsel had sufficient grounds to support a reasonable belief that perjury would occur, Berrysmith had no constitutional right to be present at the in camera hearing. The record fully supports the court's determination that counsel's belief was reasonable. Withdrawal was, therefore, appropriate. A different judge then determined that Berrysmith was equivocal with respect to his announced decision to represent himself, appointed an attorney to serve as co-counsel with Berrysmith, and continued the trial to allow new counsel time to prepare. We conclude that this was entirely appropriate under CrR

3.3(h)(2). Accordingly, we affirm the conviction and dismiss the personal restraint petition.[1]

## FACTS

Lionel Berrysmith was charged with delivery of cocaine in violation of RCW 69.50.401(a)(1)(i), after selling rock cocaine to an undercover Seattle Police officer during a "buy-bust" operation in Seattle.

On the first day of Berrysmith's jury trial, his appointed attorney, Terry Mulligan, moved in camera before Judge Finkle to be allowed to withdraw, based on Mulligan's strong belief that Berrysmith intended to perjure himself on the witness stand and Mulligan's inability to dissuade Berrysmith from that course. Berrysmith was not present during this hearing. Mr. Mulligan explained to the judge that Berrysmith initially wrote him a letter setting out Berrysmith's version of the facts leading to his arrest. Later, after Mulligan successfully obtained a court order allowing Berrysmith to review discovery documents, Berrysmith told the attorney a different story, one that appeared to have been woven around the facts contained in the police reports, and one that was contrary to Berrysmith's initial story in several significant respects. Mulligan stated that his belief was reinforced by Berrysmith's claim that a hat linking Berrysmith to the crime (which had been taken from him at the jail but which had not been booked into evidence) was not Berrysmith's hat. At Berrysmith's request that Mulligan retrieve the hat, Mulligan directed a paralegal at the Public Defender's office to pick up the hat from the jail property room; she did so and signed a receipt for it. Mulligan explained that the hat was, at that moment, on his desk in his office and that he believed that once Berrysmith made the claim that he had no hat when he was booked into jail, the property room records would be checked and his paralegal would

---

[1]Berrysmith's remaining contentions, which we also find to be without merit, are treated in the unpublished portion of this opinion.

likely be called as a witness for the State to explain how it was that she came to retrieve the hat from among Berrysmith's personal effects being held at the jail.

Mulligan also indicated that his efforts to dissuade Berrysmith from testifying falsely at the trial were unavailing, in that Berrysmith angrily refused to discuss the matter with him, and felt that Mulligan was betraying him. Mulligan told the judge that Berrysmith had said, that very morning, that he wanted a new attorney. Judge Finkle granted Mr. Mulligan's motion to withdraw.

Back in the courtroom, Judge Finkle explained to Berrysmith that his attorney had been allowed to withdraw and that Berrysmith was no longer represented by counsel. The judge asked Berrysmith whether he wished to have new counsel substituted, explaining that such would delay the trial, or whether he wished to represent himself. Berrysmith stated that he did not want to wait for a new attorney to prepare to try his case, and that he also did not want to represent himself, but felt that he had no other choice in that he had been in jail for 60 days. Judge Finkle conducted a lengthy *Faretta*[2] colloquy, approved Berrysmith's request to represent himself, appointed attorney Roger Ley to act as standby counsel, and proceeded with the trial.

The following day, Berrysmith moved for dismissal of the cocaine delivery charge on the ground that he had been "forced" to represent himself. Judge Finkle denied the motion to dismiss and referred the matter to the criminal presiding department. Concluding after a thorough colloquy that Berrysmith was equivocal about whether or not he wanted to be represented by counsel, Judge DuBuque changed Mr. Ley's designation from standby counsel to co-counsel and, despite Berrysmith's strong objection, continued the case for three weeks to allow Mr. Ley to prepare for trial.

At trial, which was presided over by Judge Alsdorf, Ber-

---

[2]*Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

rysmith acted as his own attorney. The jury found him guilty as charged. Berrysmith was sentenced within the standard range. This timely appeal and personal restraint petition followed.

DISCUSSION

Direct Appeal

I

A criminal defendant has a constitutional right under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to be present during all "critical stages" of the criminal proceedings. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). The Due Process Clause is implicated in situations where the defendant is not actually confronting witnesses or evidence against him or her. *Id*. A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his or her presence would contribute to the fairness of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987); *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674, 90 A.L.R. 575 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653, (1964); *In re Personal Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835, *clarified by* 123 Wn.2d 737, 870 P.2d 964 (where hearing outside defendant's presence relates solely to legal matters, the defendant has no constitutional right to be present), *cert. denied*, 513 U.S. 849 (1994). Due process does not require the defendant's presence "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106-07. Thus, when the right of confrontation is not at issue, the two questions that must be addressed in determining whether the hearing was a critical stage of the proceedings are: (1) whether the subject of the hearing related purely to a legal matter; (2) and if so, whether absence of the defendant nevertheless bore a reasonably substantial

relation to the fullness of his or her opportunity to defend against the charge, or whether a fair and just hearing was thwarted by his absence. *Gagnon*, 470 U.S. at 526; *Lord*, 123 Wn.2d at 306.

Berrysmith contends that the in camera hearing in Judge Finkle's chamber was a critical stage of the criminal proceedings because factual assertions were at issue, i.e., whether or not Berrysmith intended to commit perjury while testifying at the trial, and because the resolution of that issue implicated not only Berrysmith's right to be represented by counsel at trial but also his right to a speedy trial under CrR 3.3. Berrysmith argues that a fair and just hearing was thwarted by his absence, in that he had no opportunity to refute the allegation that he intended to commit perjury.

Berrysmith raises a question of first impression in Washington, and one that has been addressed by several state and federal courts, some with differing views. In *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978), the court held that the issue of whether counsel who believed that his client was about to give perjured testimony would be allowed to withdraw was solely a legal matter and that the presence of the defendant was not constitutionally required. Similarly, in *State v. Fosnight*, 235 Kan. 52, 679 P.2d 174, 181, (1984), the court held:

> The matter of the withdrawal of counsel, upon being advised that his client intends to commit perjury, is a matter governed by ethical standards, and is, therefore, a matter of law. . . . [I]n-chambers conferences dealing with legal or procedural questions are not stages of the trial at which a defendant's presence is required in order to avoid prejudice.

*Accord Harris v. State*, 632 So. 2d 503, 509-12 (Ala. Crim. App. 1992), *aff'd*, 632 So. 2d 543 (1993); *McKissick v. United States*, 398 F.2d 342 (5th Cir. 1968). *But see People v. Ebert*, 244 Cal. Rptr. 447, 449-50, 199 Cal. App. 3d 40 (Cal. Ct. App. 1988) (reversing conviction after defendant, who was acting as his own counsel, was excluded from hearing which resulted in the loss of his court-appointed advisory counsel, who moved to withdraw citing

her belief that the defendant intended to commit perjury at upcoming trial; ruling based on fact that defendant, who was acting as his own counsel, was not represented at the hearing and was prejudiced because no replacement counsel, standby or otherwise, was provided after advisory counsel was allowed to withdraw); *Plunkett v. State*, 883 S.W.2d 349 (Tex. Ct. App. 1994); *Myers v. State*, 254 So. 2d 891 (Miss. 1971).

Berrysmith argues that his case is akin to *Ebert*, in that his court-appointed counsel was not representing his interests at the hearing; rather counsel presented a position adverse to Berrysmith by offering evidence that Berrysmith intended to commit perjury. Citing *McKissick*, 398 F.2d at 344, the State responds that Berrysmith's counsel did not act contrary to the client's best interests by disclosing the intended perjury, as the defendant's interest in a fair trial necessarily means a perjury-free trial.

We conclude that the true issue before Judge Finkle was not whether Berrysmith actually intended to commit perjury during the trial. Rather, the true issue was whether Mr. Mulligan had a sufficient factual basis for his strong belief that perjury was intended and could not be dissuaded, so that continuing with the representation would result in a violation of the Rules of Professional Conduct, absent a court order disallowing withdrawal. We agree with those courts that have ruled that this is purely a legal question. RPC 1.15 requires that, except as otherwise ordered by the court, a lawyer shall withdraw from the representation of a client if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent. Perjury is both a criminal act and a fraud upon the court. Thus, a lawyer who reasonably believes that his or her client intends to commit perjury and cannot be dissuaded from that course is ethically bound to withdraw unless the court, after being so advised, refuses to permit withdrawal. The question for the court, therefore, is whether the lawyer *reasonably believes*

that the client intends to commit perjury and cannot be dissuaded, and not whether the client in fact intends to commit perjury and cannot be dissuaded.

Whether the lawyer's belief is reasonable depends upon whether it has a firm factual basis. *See State v. James*, 48 Wn. App. 353, 366-67, 739 P.2d 1161 (1987) (before moving to withdraw, attorney must have a firm factual basis for believing that his or her client intends to commit perjury; attorney's "gut level" suspicion not enough). *See also People v. Brown*, 250 Cal. Rptr. 762, 764, 203 Cal. App. 3d 1335 (1988) (in camera motion to withdraw is proper method for seeking leave to withdraw if counsel holds a firm belief that client intends to commit perjury).

In his personal restraint petition, Berrysmith claims that he never intended to commit perjury. But Berrysmith never denies the facts related by Mr. Mulligan to support his reasonable belief that perjury was intended. Any such denial would have added nothing to the proceeding, in any event; as we have already stated, the issue was not Berrysmith's actual intent but rather the reasonableness of Mr. Mulligan's belief. Accordingly, Berrysmith's presence was not required for a full and just hearing on the pure legal question before the court. Moreover, the resolution of the legal question bore no substantial relation to the fullness of Berrysmith's ability to defend against the charge of delivery of cocaine. Certainly, Berrysmith had the constitutional right to be represented by counsel in the defense of those charges, but he had no constitutional right to a lawyer who would cooperate with planned perjury. *See Nix v. Whiteside*, 475 U.S. 157, 173, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986). By that same token, we hold that he had no constitutional right to be represented by an attorney who *reasonably believed* that Berrysmith planned to commit perjury and could not be dissuaded, even if Berrysmith in fact had no such intention. The basis of the ethical restriction is the lawyer's reasonable belief. *See* RPC 1.15(b)(1). A lawyer who reasonably believes that his or her client intends to commit perjury

may neither advocate nor passively tolerate the client's position. *See* RPC 3.3; RPC 1.6; *State v. Fleck*, 49 Wn. App. 584, 586, 744 P.2d 628 (1987) (RPC 3.3 in conjunction with RPC 1.6 requires attorney to disclose client's plan of perjury to the court if necessary to avoid assisting such criminal act), *review denied*, 110 Wn.2d 1004 (1988). We conclude that a defendant has no legitimate interest that conflicts with his or her attorney's obligation not to tolerate perjury and to adhere to the Rules of Professional Conduct. *See Nix*, 475 U.S. at 187 (Blackmun, J., concurring). Accordingly, Berrysmith had no constitutional right to be present at the in camera hearing addressing Mr. Mulligan's obligations under the Rules of Professional Conduct.

That the motion to withdraw was granted on the CrR 3.3 speedy trial expiration date does not change the result. Certainly, any attorney who finds himself in the same kind of ethical quandary that faced Mr. Mulligan should bring the situation to the attention of the court as early as is reasonably consistent with the attorney's obligation to earnestly attempt to dissuade the client from committing perjury, but there is neither a contention in this case nor any indication in the record before this court that Mulligan was dilatory in bringing the matter to the attention of the court. In sum, we conclude that the in camera hearing was not a critical stage of the criminal proceeding within the meaning of the Due Process Clause. Accordingly, Berrysmith's due process rights were not violated by his exclusion from the hearing.

## II

Berrysmith next contends that the court erred in allowing Mr. Mulligan to withdraw because Mulligan, who Berrysmith contends held merely a "gut level" belief that Berrysmith intended to commit perjury, had insufficient grounds to support a reasonable belief that perjury would occur. In his pro se supplemental brief, Berrysmith also contends that Judge Finkle improperly granted the mo-

tion to withdraw because he was sympathetic toward Mr. Mulligan. We reject these contentions.

■ CrR 3.1(e) provides that after a criminal case has been set for trial, an attorney shall not be allowed to withdraw except for good and sufficient reasons. As the *Nix* court observed, however, MODEL RULES OF PROFESSIONAL CONDUCT 1.16 (1995) (which is identical to RPC 1.15) expressly permits an attorney who tries and fails to dissuade a defendant from giving perjured testimony to withdraw from representation. *Nix*, 475 U.S. at 170. Thus, CrR 3.1(e) is not violated by a withdrawal that is appropriate under RPC 1.15.

In *James*, 48 Wn. App. at 356, at an in camera motion to withdraw, the defendants' attorney told the court that he "suspected" and "sensed" that the defendants and a defense witness were planning to perjure themselves, but the attorney failed to provide the court with a factual basis for the suspicion. The reviewing court stated that a firm basis for believing that a client will commit perjury was not created by the attorney's "gut level belief." *James*, 48 Wn. App. at 366-67.

Contrary to Berrysmith's contention that this case is like *James*, Mr. Mulligan demonstrated much more than a "gut level belief." Initially, Berrysmith wrote Mulligan a letter setting out his version of the facts. Later, after Mulligan successfully obtained an order allowing Berrysmith to review discovery documents, Berrysmith told the attorney a different story, one that appeared to be woven around the facts contained in the police reports and one that was contrary to Berrysmith's initial story in several significant respects. Moreover, Mulligan had a realistic apprehension that Berrysmith's denial that the hat was his would result in Mulligan's paralegal being called as a witness to rebut the contention, giving rise to a conflict of interest. *See* RPC 3.7; RPC 5.3. Mr. Mulligan's attempts to dissuade Berrysmith from committing perjury resulted in an angry response from Berrysmith and a refusal to discuss the matter. On these facts, withdrawal was appropriate.

In his pro se supplemental brief, Berrysmith contends, without citation to authority, that attorney Mulligan should have allowed him to get on the witness stand and testify, in that without such testimony, there was insufficient proof of Berrysmith's intent to commit perjury. Although the argument is not supported by legal authority and need not be addressed on that basis, we elect to address it in order to provide guidance to the bar with respect to one of the "three hardest questions" that criminal defense attorneys face. *See* Monroe H. Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 MICH. L. REV. 1469 (1966).

█ Berrysmith's argument is wholly without merit. Not only was Mr. Mulligan prohibited by RPC 3.3 in conjunction with RPC 1.6 from offering evidence that he reasonably believed to be false, *see Fleck*, 49 Wn. App. at 586, but if Berrysmith had actually taken the stand and testified falsely, Mulligan would have been required by RPC 3.3(c) to bring this to the trial court's attention. The most likely result would have been a mistrial. A potential result would have been the bringing of perjury charges against Berrysmith. Neither result would have served Berrysmith's best interests. *Nix*, 475 U.S. at 186 (Blackmun, J., concurring); *McKissick*, 398 F.2d at 344 (defendant's interest in a fair trial necessarily means a perjury-free trial). We conclude that where, as here, the attorney has a firm basis to believe that the client intends to testify falsely, the attorney should bring that belief and the factual basis for it to the court's attention before the client testifies, rather than afterward. As observed by the *Nix* court, 475 U.S. at 169, a lawyer who knowingly allows a client to commit perjury may subject himself or herself to criminal prosecution, as well as to bar discipline. Because an attorney must, under RPC 1.2(a), allow the client to testify if he so chooses, the attorney has no way to prevent the client from perjuring himself or herself if the client remains adamant or, as here, simply refuses to the discuss the matter with the attorney. An accused has the

right to counsel but does not have the right to counsel who will stand by and knowingly allow perjury. *Nix*, 475 U.S. at 173. Where, as here, counsel's reasonable belief that the client intends to testify falsely and cannot be dissuaded arises prior to or simultaneously with the commencement of trial, the situation should be brought to the court's attention before trial begins, in the interest of judicial economy and the preservation of scarce public resources.

■ In sum, we find no abuse of discretion in Judge Finkle's decision to grant the motion to withdraw.

### III

■ Berrysmith contends that his CrR 3.3 right to a speedy trial was violated by Judge DuBuque's decision to grant a three-week recess to allow Berrysmith's newly-appointed co-counsel to prepare for trial. The continuance was granted based on CrR 3.3(h)(2), "administration of justice," and CrR 3.3(d)(8), "unforeseen or unavoidable circumstances." The facts of this case clearly reflect unforeseen or unavoidable circumstances as required by CrR 3.3(h)(2). Once Mr. Mulligan acquired a reasonable belief that Berrysmith intended to commit perjury despite being warned, his motion to withdraw from the case was ethically unavoidable. The attendant delay became unavoidable because Berrysmith told Judges Finkle and DuBuque that his decision to represent himself had not been voluntary. Given these circumstances, a three-week delay to allow co-counsel to prepare for trial was entirely appropriate. Berrysmith's CrR 3.3 speedy trial rights were not violated.

We affirm Berrysmith's conviction and dismiss the personal restraint petition.

The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports, but will be filed for public record as provided in RCW 2.06.040.

BAKER, C.J., and BECKER, J., concur.

Review denied at 134 Wn.2d 1008 (1998).