IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32782-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABEL PEREZ-MORALES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Abel Perez-Morales appeals a restitution order imposed after his guilty plea for theft. We reverse in part and affirm in part the order. We affirm that portion of the order that imposed restitution for the value of those goods stolen under the charge to which Perez-Morales pled guilty. We reverse that portion of the restitution order that ordered payment of the value of goods stolen, for which the State did not charge Perez-Morales nor has evidence connecting him to the theft. To the State's credit, it concedes the need for the partial reversal.

## FACTS

On November 18, 2013, Abel Perez-Morales stole more than $750 worth of batteries and cables from Bert Gledhill, a resident of rural Franklin County.

## PROCEDURE

On November 25, 2013, the State of Washington charged Abel Perez-Morales

No. 32782-5-III
*State v. Perez-Morales*

with trafficking in stolen property in the first degree and theft in the second degree. For the theft charge, the State alleged, "That . . . Abel Perez-Morales in the County of Franklin, State of Washington, on or about November 18, 2013, then and there, did wrongfully obtain, batteries, property of another belonging to Bert Gledhill of a value exceeding seven hundred fifty dollars ($750.00), with intent to deprive Bert Gledhill of such property." Clerk's Papers (CP) at 29-30.

On March 11, 2014, Abel Perez-Morales pled guilty to theft in the second degree. On the statement of defendant on plea of guilty, Perez-Morales admitted: "I stole over $750 worth of property in Franklin Co [County] WA." CP at 26. The written statement contains no further description of the theft nor mentions or describes any other theft. The trial court sentenced Perez-Morales to sixty days' confinement and imposed $1,653 in legal financial obligations (LFOs). The LFOs did not comprise restitution.

The judgment and sentence signed by the trial court read concerning restitution:

[X] The above total does not include all restitution or other legal financial obligations, which may be set by later order of the court. An agreed restitution order may be entered. RCW 9.94A753. A restitution hearing:
        [X] shall be set by the prosecutor
        [ ] is scheduled for _____.
        [X] Defendant waives any right to be present at any restitution hearing (sign initials): /s/ APM

CP at 11.

On May 28, 2014, Abel Perez-Morales' court-appointed attorney, Christine

2

Bennett, withdrew from representation of Perez-Morales. On August 12, 2014, the State

scheduled a restitution status conference for August 19, 2014. The notice of issue and

note for motion docket declared that the State sent the notices to "Christine Bennett,

attorney for the defendant." CP at 4. The notices did not disclose whether the State sent

them to Perez-Morales.

On September 2, 2014, the trial court conducted a restitution hearing. Christine

Bennett appeared for Abel Perez-Morales. Perez-Morales was not present for the

hearing. The State expressed a belief that Perez-Morales had been deported. Bennett did

not know Perez-Morales' location or residence. In Perez-Morales' absence, Bennett

asked the trial court to cancel the hearing on the ground that Perez-Morales lacked notice.

In turn, the State objected to Bennett's presence because of her earlier notice of

withdrawal. The trial court denied Bennett's motion to cancel the hearing since Perez-

Morales waived notice in his statement of guilty plea. The trial court did not expressly

grant the State's objection to the presence of counsel Bennett, although the court noted

the effectiveness of her withdrawal and questioned her standing to object to admission of

an exhibit. The trial court allowed Bennett to forward motions and objections and to

argue against the merits of the State's request for restitution.

At the restitution hearing, the State reported that a burglar stole jewelry, luggage,

tools, computer hardware, camping and hiking equipment, cuff links, a leather briefcase,

a laptop, and other goods from Franklin County residents Scott and Tamlee McGary.

The State also declared that the burglar damaged the McGary home. The McGary's insurer, Mutual of Enumclaw, compensated the couple $1,206.05.

At the restitution hearing, the State further averred that a burglar broke a window in the home of Stanley Needles, another Franklin County resident, and stole a firearm. Police recovered the firearm, but Needles replaced the shattered window at a cost of $914.05. Finally, the State alleged, at the hearing, that a burglar severed and purloined batteries from commercial vehicles and tractors owned by Franklin County resident, Maynard Bailie, and Bailie sustained a loss of $4,065.42 because of the theft. Bailie's insurer compensated him $3,065.42, an amount equaling his total loss less a $1,000.00 deductible.

At the September 2 restitution hearing, the State characterized Abel Perez-Morales as the "ring leader" of the Gledhill, Needles, McGary and Bailie thefts. The prosecution declared:

> Mr. Perez Morales was the ring leader to all of the thefts. He was the one trafficking in stolen batteries at a recycling facility. His fingerprints were found at the burglaries.
> The co-defendants pled to unrelated charges like drug possession and forgery as opposed to theft because the State couldn't prove that they were involved in this. They might have been present when the search warrant was served, however Mr. Perez Morales, we had evidence that he was trafficking in stolen property at the metal recycling facilities.

Report of Proceedings (RP) at 8. The record contains no evidence that substantiates the State's claim that fingerprint evidence tied Perez-Morales to all four thefts.

4

The State of Washington sought restitution from Abel Perez-Morales in the aggregate sum of $9,448.10: $1,000.00 for Maynard Bailie, $3,065.42 for Nationwide Insurance, $2,390.75 for Scott and Tamlee McGary, $1,206.05 for Mutual of Enumclaw, $871.83 for Bert Gledhill, and $914.05 for Stanley Needles.

Bert Gledhill completed a "Restitution Estimate Form," on which he claimed lost batteries and cables worth $871.83. Ex. 1 at 33. The form listed the crimes associated with the theft as "<u>GALVAN-AMBRIZ</u>: **ALIEN IN POSSESSION OF A FIREA[R]M & POSSESSION OF STOLEN PROPERTY IN THE SECOND DEGREE**; <u>PEREZ-MORALES</u>: **TRAFFICING [sic] IN STOLEN PROPERTY IN THE FIRST DEGREE & THEFT IN THE SECOND DEGREE**." Ex. 1 at 33.

At the restitution hearing, the State submitted a document labeled Exhibit 1 in order to substantiate the restitution claim of $9,448.10. Bert Gledhill's restitution estimate form was included in Exhibit 1. Exhibit 1 also contained a proposed order for restitution with the above totals and a multitude of receipts and estimates that substantiated the totals. *See generally* Ex 1. Beyond Gledhill's restitution form, nothing in Exhibit 1 described the four thefts or connected the thefts to Abel Perez-Morales.

At the restitution hearing, attorney Christine Bennett, on behalf of Abel Perez-Morales, objected to admission of Exhibit 1 on the ground that no witness authenticated the documents contained in the exhibit. Counsel also objected to the exhibit on the ground that she untimely received a copy of the exhibit and documents enclosed in the

5

exhibit were irrelevant since they were unrelated to the crime to which Abel Perez-Morales pled guilty. Bennett expressed frustration at receiving the exhibit "less than a month ago." RP at 5.

The trial court admitted Exhibit 1. The trial court nonetheless agreed that no facts connected Abel Perez-Morales to the losses incurred by the McGarys, Mutual of Enumclaw, or Stanley Needles. The trial court ordered $4,937.25 in restitution. The order directed Perez-Morales to pay $1,000.00 to Maynard Bailie, $3,065.42 to Nationwide Insurance, and $871.83 to Bert Gledhill.

## LAW AND ANALYSIS

On appeal, Abel Perez-Morales contends: (1) the State failed to provide him with proper notice of the restitution hearing in violation of his right to due process, (2) the trial court erred when it admitted Exhibit 1 at the restitution hearing, and (3) no evidence supports the trial court's order of restitution to Maynard Bailie or Nationwide Insurance. The State concedes error in restitution for Bailie and, by implication, error in the award for Bailie's insurer, Nationwide Insurance. We accept the State's concession and vacate the portion of the restitution order favoring Bailie and Nationwide Insurance.

If we agreed with Abel Perez-Morales' first two assignments of error, we would vacate the entire restitution order. We reject Perez-Morales' first two assignments error and affirm the restitution award in favor of Bert Gledhill.

6

## Notice of Hearing

Abel Perez-Morales contends the State failed to provide him with compulsory notice of the restitution hearing in violation of his right to due process. Perez-Morales argues the State never notified him or even attempted to notify him of the hearing. He further contends that his signed waiver relinquished his right to be present at the restitution hearing, but not to notice of the hearing.

The State maintains that it notified Abel Perez-Morales of the restitution hearing through his counsel, Christine Bennett. The State further argues that service on Bennett was sufficient since Bennett's withdrawal from representing Perez-Morales was not yet effective. We agree with the State.

The constitutional guaranty of due process of law in its essence requires notice and an opportunity to be heard. *State v. Rogers*, 127 Wn.2d 270, 275, 898 P.2d 294 (1995). The notice must be reasonably calculated to inform the affected party of the pending action and of the opportunity to object. *City of Redmond v. Arroyo-Murillo*, 149 Wn.2d 607, 612, 70 P.3d 947 (2003); *State v. Dolson*, 138 Wn.2d 773, 777, 982 P.2d 100 (1999). The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950). A restitution hearing entered without proper notice is invalid. *State v. Saunders*, 132 Wn. App. 592, 608, 132 P.3d 743 (2006).

7

Restitution is an integral part of sentencing. *State v. Dedonado*, 99 Wn. App. 251, 257, 991 P.2d 1216 (2000). The authority to impose restitution is statutory. *State v. Deskins*, 180 Wn.2d 68, 81, 322 P.3d 780 (2014). Under RCW 9.94A.753(1), "the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days."

Neither RCW 9.94A.753 nor the Superior Court Criminal Rules establish specific notice requirements for restitution hearings. Nor does the Franklin County Local Court Rules specify a notice requirement. CrR 8.4 provides: "CR 5 shall govern service and filing of written motions (except those heard ex parte) in criminal causes." Our Supreme Court has relied on CR 5 to assess whether service under that rule is sufficient to provide notice. *State v. Clark*, 129 Wn.2d 805, 814, 920 P.2d 187 (1996). CR 5(b) provides: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service *shall be made upon the attorney* unless service directly upon the party is ordered by the court." (Emphasis added.) Thus, the State needed to serve Christine Bennett rather than Perez-Morales with notice of the restitution hearing, assuming Bennett still represented Perez-Morales.

Abel Perez-Morales argues that service on Christine Bennett was ineffective because she earlier withdrew from representing him. We disagree with Perez-Morales' presumption that Bennett had withdrawn. Bennett never procured a court order permitting withdrawal. We conclude a court order was necessary and thus counsel's

8

notice of withdrawal was ineffective.

CrR 3.1 reads:

> **(e) Withdrawal of Lawyer.** Whenever a criminal cause has been set for trial, no lawyer shall be allowed to withdraw from said cause, except upon written consent of the court, for good and sufficient reason shown.

CrR 3.1 requires a court order for criminal defense counsel to withdraw but the express terms of the rule apply only with a pending trial date. The rule does not declare that a court order must be obtained after completion of trial.

CR 71 controls an attorney's withdrawal from representation in a civil proceeding. The rule provides:

> **(a) Withdrawal by Attorney.** Service on an attorney who has appeared for a party in a civil proceeding shall be valid to the extent permitted by statute and rule 5(b) only until the attorney has withdrawn in the manner provided in sections (b), (c), and (d). Nothing in this rule defines the circumstances under which a withdrawal might be denied by the court.
> **(b) Withdrawal by Order.** A court appointed attorney may not withdraw without an order of the court. The client of the withdrawing attorney must be given notice of the motion to withdraw and the date and place the motion will be heard.

CR 71 demands that a court appointed attorney secure a court order before withdrawing and does not limit the time during which an order must be obtained. The rule does not apply, however, to criminal cases.

No Washington decision expressly holds that criminal defense counsel must garner a court order before withdrawing from representation after sentencing. Many

Washington decisions assume the need for criminal defense counsel to obtain a court order for an effective withdrawal at any time during the criminal proceeding. Some of the decisions involve posttrial motions and appeals. *State v. Bird*, 31 Wn.2d 777, 198 P.2d 978 (1948); *State v. Chavez*, 162 Wn. App. 431, 257 P.3d 1114 (2011); *State v. Fualaau*, 155 Wn. App. 347, 228 P.3d 771 (2010); *State v. Rooks*, 130 Wn. App. 787, 125 P.3d 192 (2005); *State v. Vicuna*, 119 Wn. App. 26, 79 P.3d 1 (2003); *State v. Berrysmith*, 87 Wn. App. 268, 944 P.2d 397 (1997); *State v. Ramos*, 83 Wn. App. 622, 922 P.2d 193 (1996); *State v. Robinson*, 58 Wn. App. 599, 794 P.2d 1293 (1990), *abrogated on other grounds by State v. Taylor*, 140 Wn.2d 229, 996 P.2d 571 (2000); *State v. Hegge*, 53 Wn. App. 345, 766 P.2d 1127 (1989); *State v. Marker*, 4 Wn. App. 681, 483 P.2d 853 (1971); *State v. Haverty*, 3 Wn. App. 495, 475 P.2d 887 (1970). A criminal defendant's constitutional right to counsel at all stages of the criminal procedure compels a conclusion that counsel needs a court order to withdraw from representation of a defendant.

Here Christine Bennett withdrew with the expectation of an upcoming restitution hearing. She knew of the need of Perez-Morales for representation at the hearing.

We note that, despite filing the withdrawal of counsel, Christine Bennett, to her credit, appeared at the restitution hearing. She met her obligations as counsel for Abel Perez-Morales. She vigorously objected to the motion and the State's exhibit, and she ably argued against the merits of the State's request for restitution.

10

At the restitution hearing, the State urged the trial court to deny Christine Bennett standing to represent Abel Perez-Morales on the ground that Bennett had withdrawn. On appeal, the State argues notice to Bennett was proper as her withdrawal was not effective under CR 71. Nevertheless, Abel Perez-Morales does not request application of judicial estoppel.

## Exhibit 1

Abel Perez-Morales next contends that the trial court erred when it admitted Exhibit 1. When disputed, the facts supporting a restitution award must be proved by a preponderance of the evidence. *State v. Deskins*, 180 Wn.2d at 82 (2014). RCW 9.94A.753 does not explicitly require that the State summon witnesses or submit documentation to address a defendant's challenges. *State v. Dedonado*, 99 Wn. App. at 257 n.11 (2000). Nevertheless, the evidence presented by the State must afford a reasonable basis for estimating loss. *State v. Dedonado*, 99 Wn. App. at 257 n.11. Courts may rely on a broad range of evidence, including hearsay, because the rules of evidence do not apply to sentencing hearings. *State v. Deskins*, 180 Wn.2d at 83; ER 1101(c)(3).

Abel Perez-Morales underscores that the State failed, in conflict with ER 104, 602, and 902, to call a witness to authenticate Exhibit 1. As already declared, since restitution is part of sentencing, the rules of evidence do not apply. Abel Perez-Morales argues the trial court admitted the exhibit in violation of his right to confront witnesses against him.

In breach of RAP 10.3(a)(6), Perez-Morales cites no authority in support of his constitutional claim that the right to confront witnesses attaches to a restitution hearing. We refuse to address the argument. *In re Pers. Restraint of Erickson*, 146 Wn. App. 576, 588, 191 P.3d 917 (2008).

Abel Perez-Morales also argues that the State failed to provide him a copy of Exhibit 1 prior to the restitution hearing and this omission violated his due process rights. Nevertheless, at the hearing, Perez-Morales' counsel conceded to receiving Exhibit 1 weeks before the hearing. As discussed above, service of the exhibit on counsel was also effective service of the exhibit on Perez-Morales. Perez-Morales identifies no specific prejudice by reason of weeks' notice of the exhibit. She never specified the number of weeks before the hearing when she acquired the exhibit.

Because the State concedes error in restitution for Maynard Bailie and Nationwide Insurance, this court need only consider the reasonableness of the evidence pertaining to Bert Gledhill. Gledhill's completed restitution estimate form and the attached receipts afforded a reasonable basis for estimating his losses.

Causal Connection

Abel Perez-Morales last contends no evidence supported the trial court's order of restitution to Maynard Bailie or Nationwide Insurance. The State concedes the validity of this contention. We accept the State's concession.

12

Restitution is authorized only by statute, and a trial court exceeds its statutory authority in ordering restitution when the loss suffered is not causally related to the offense committed by the defendant. *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834 (1998); *State v. Vinyard*, 50 Wn. App. 888, 891, 751 P.2d 339 (1988). Under RCW 9.94A.753(5):

> Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property . . . unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

Under the statute, a court may order restitution for an offense an offender did not plead guilty to only if the offender agrees. In determining any sentence, including restitution, the sentencing court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. *State v. Dedonado*, 99 Wn. App. at 256 (2000).

Abel Perez-Morales pled guilty to only theft in the second degree. The charging information identifies only a single theft that occurred on November 18, 2013. Perez-Morales' plea contained no mention of any other theft. Nothing in the plea or judgment and sentence connected Perez-Morales to the losses incurred by Maynard Bailie or his insurer.

13

No. 32782-5-III
*State v. Perez-Morales*

The dismissed charge of trafficking in stolen property in the first degree may have related to Maynard Bailie's losses. But Perez-Morales did not agree to restitution regarding the dropped charge. Restitution for loss beyond the scope of the crime charged is properly awarded only when the defendant enters into an express agreement, as part of the plea bargain process, to make such restitution. *State v. Woods*, 90 Wn. App. at 909 (1998).

## CONCLUSION

We reverse the trial court's restitution award and remand with instructions to strike the restitution ordered for Maynard Bailie and Nationwide Insurance in the aggregate sum of $4,065.42. We affirm the restitution award to Bert Gledhill.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

14