IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  37846-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL D. CHENOWETH, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Michael Chenoweth appeals his conviction for first degree assault.  He contends the agreed supplemental narrative of jury selection is not sufficiently complete to allow effective appellate review.  He also contends the trial court violated his due process rights when it entered an order, in his absence, allowing the administration of involuntary medication without considering the *Sell*[1] factors.

We disagree and affirm.  First, the agreed supplemental narrative of jury selection is sufficient to permit effective appellate review because it adequately confirms the absence of reversible error.  Second, the trial court did consider the *Sell* factors, and Chenoweth's absence at that hearing was harmless beyond a reasonable doubt, given that

---

[1] *Sell v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).

the medication significantly benefited him and resulted in restored competency so he

could assist his counsel at trial. We affirm Chenoweth's conviction.

FACTS

In August 2019, the State charged Chenoweth with harassment, assault in the first

degree, and resisting arrest. Soon after these charges were filed, defense counsel

reviewed the police report and requested an order for mental competency examination.

The trial court granted the request. Soon after, the trial court held a review hearing with

Chenoweth present. During the hearing, the parties agreed that Chenoweth should

receive involuntary treatment pursuant to RCW 71.05.240, and the court so ordered.

On September 13, 2019, the parties appeared in court again, but this time without

Chenoweth. The parties presented two agreed proposed orders, one for competency

restoration treatment and the other for authorizing administration of involuntary

medication. The involuntary medication order expressly set forth each of the four *Sell*

factors,[2] and a box appeared next to each factor with an "X" in the box. Clerk's Papers

(CP) at 61-62.

---

[2] *Sell* requires the trial court to make four findings before authorizing the involuntary administration of medications: (1) that important state interests are at stake, (2) that involuntarily administering medication will significantly further the state's interests, (3) that involuntarily administering medication is necessary to further the state's interest, and (4) that administration of the drugs is in the patient's best medical interest in light of their medical condition. 539 U.S. at 180-81.

The proposed orders were based on a report authored by a licensed psychologist,

Dr. Trevor Travers. Dr. Travers concluded in his report:

> In my opinion, [Mr. Chenoweth] does not currently have the capacity to understand the proceedings against him or to assist in his own defense. Therefore, I recommend an Order Staying Proceedings at Eastern State Hospital for 90 days pursuant to RCW 10.77 for the purposes of treating Mr. Chenoweth and assisting him to regain his competency to stand trial. Records reviewed regarding Mr. Chenoweth indicated that he has delusions about being poisoned by his medications or his doctors. In my opinion, psychiatric medication will be necessary for his competency restoration, and in my opinion, it is likely that he would refuse voluntary compliance with medications due to his delusional beliefs. Therefore, I recommend that an Order Staying Proceedings for Mr. Chenoweth include a provision that allows Eastern State Hospital to involuntarily administer antipsychotic and psychotropic medications to him and to obtain appropriate laboratory studies should he refuse voluntary compliance with the medications or the studies.

Rep. of Proc. (RP) at 40.

The verbatim transcript of the motion hearing contains numerous "inaudible"

notations, so the parties agreed to a reconstructed version of the transcript. The trial court

adopted the reconstructed transcript, which provides in relevant part:

> THE COURT: Let's call the case of Michael Chenoweth. Michael Chenoweth is—I was just told by our corrections staff that he's still not present.
> [PROSECUTING ATTORNEY]: Judge, he's the evaluation from Eastern that he's not competent. I've handed up an order on restoration, they're also asking for an order on involuntary medication. . . .
> . . . .

No. 37846-2-III
*State v. Chenoweth*

> [PROSECUTING ATTORNEY]: . . . We need the court to enter those orders—restoration process, I think they noted a hearing in there for they suggested 90 days, I want to say it's December 9th.
>
> . . . .
>
> THE COURT:  . . .  There is no objection to the administration of involuntary . . .  You probably looked up the law and realized there's not much the legal thing to do . . .
>
> [DEFENSE COUNSEL]:  Yeah, I'm just not confident I'm not sure my client would have been thrilled with that but I don't think he's competent to make a decision as to tell me whether he agreed or not, and I do think it's in his best interest.

CP at 239-40.  The court signed both orders.

On September 29, 2020, the State filed an amended information charging Chenoweth with assault in the first degree and alleging a deadly weapon enhancement.

Chenoweth was admitted to Eastern State Hospital on October 28, 2019. Following Chenoweth's 90-day competency restoration treatment, Dr. Randall Strandquist conducted a forensic evaluation and prepared a report for the court.  His report states in part:

> Over the course of Mr. Chenoweth's admission he was compliant with medication . . . .
>
> . . . .
>
> Mr. Chenoweth said that he felt much better, when compared to how he felt when Dr. Travers interviewed him. . . .  He did admit that the medication he is currently taking has made a significant difference in helping him feel better.  He denied experiencing any significant side effects. . . .
>
> . . . .

4

> . . . Mr. Chenoweth demonstrated that he has sufficient knowledge of court proceedings and the roles of the participants involved with these proceedings. He was able to explain the roles and responsibilities of the judge, defense attorney, prosecuting attorney, witness, and jury.
>
> He is able to identify his attorney and how he may contact him. Mr. Chenoweth stated that he trusts his attorney. . . .

CP at 123-24. Dr. Strandquist concluded, "Mr. Chenoweth has the capacity to understand court proceedings and productively participate in his own defense." CP at 121. Based on Dr. Strandquist's report, the trial court found Chenoweth competent to stand trial.

*Jury selection and conviction*

Chenoweth's jury trial occurred during the COVID-19 pandemic. During that time, to comply with the Washington State Supreme Court's June 18, 2020 "Order RE Modification of Jury Trial Proceedings" and social distancing requirements, the court conducted jury selection at the Ellensburg Armory. Due to technical problems, Chenoweth's jury selection proceedings were not captured by the court clerk's recording devices.

The empaneled jury convicted Chenoweth of assault in the first degree and found the presence of the deadly weapon enhancement. The trial court sentenced Chenoweth, and Chenoweth timely appealed.

No. 37846-2-III
*State v. Chenoweth*

PROCEDURE ON APPEAL

On Chenoweth's motion, we stayed his appeal pending the Supreme Court's decision in *State v. Waits*, 200 Wn.2d 507, 520 P.3d 49 (2022). Following the *Waits* decision, we lifted our stay and set a briefing schedule for the parties. Notation Ruling Lifting Stay, *State v. Chenoweth*, No. 37846-2-III (Wash. Ct. App. May 9, 2023).

In the wake of *Waits*, the prosecuting attorney worked to reconstruct the record in Chenoweth's jury selection. The parties eventually submitted to the trial court a proposed agreed order to adopt the supplemental report of proceedings. The court signed the agreed order and the supplemental report became the official record of the *Sell* hearing and of Chenoweth's jury selection. The court noted that Chenoweth had "preserved no objection or exception to either of these portions of the proceedings on the record below," and that there was "no apparent GR 37, *Batson*,[3] or other manifestation of systemic injustice on this record." CP at 228.

ANALYSIS

A.    SUFFICIENCY OF RECORD FOR EFFECTIVE APPELLATE REVIEW

Chenoweth contends the agreed narrative report of proceedings for jury selection is not sufficiently complete to allow effective appellate review. We disagree.

---

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

Criminal defendants have the right to appeal in all cases. WASH. CONST. art. I, § 22. A criminal defendant is constitutionally entitled to a record of sufficient completeness to permit effective appellate review of their claims. *Waits*, 200 Wn.2d at 513; *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003). However, a sufficiently complete record does not necessarily require "'a complete verbatim transcript.'" *Tilton*, 149 Wn.2d at 781 (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971)).

Alternatives to a verbatim transcript are permissible if they permit effective review; that is, if the alternative method allows counsel to determine which issues to raise on appeal and puts before the reviewing court an equivalent report of the trial events from which the issues arise. *See id.*; *see also State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976). Alternatives include "'[a] statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.'" *Jackson*, 87 Wn.2d at 565 (quoting *Draper v. Washington*, 372 U.S. 487, 495-96, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963)).

"The burden of showing that alternatives will suffice for an effective appeal rests with the State." *Waits*, 200 Wn.2d at 514 (citing *Mayer*, 404 U.S. at 195). Where a

7

record is not sufficient to permit effective review, the remedy is a new trial. *State v.*

*Larson*, 62 Wn.2d 64, 67, 381 P.2d 120 (1963).

In Washington, RAP 9.3 and RAP 9.4 outline the permissible alternatives.

RAP 9.3 governs narrative reports. The rule provides:

> The party seeking review may prepare a narrative report of proceedings. A party preparing a narrative report must exercise the party's best efforts to include a fair and accurate statement of the occurrences in and evidence introduced in the trial court material to the issues on review. A narrative report should be in the same form as a verbatim report . . . . If any party prepares a verbatim report of proceedings, that report will be used as the report of proceedings for the review. A narrative report of proceedings may be prepared if the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged.

RAP 9.3. "This form is traditionally a summary of the testimony and proceedings at trial,

usually not by question and answer as would be a verbatim report." *Waits*, 200 Wn.2d at

514 (citing 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.1

author's cmts. at 629 (8th ed. 2014)). "The narrative report must be submitted to the trial

judge as prescribed in RAP 9.5(b), and any party may object to the report under

RAP 9.5(a)." *Id.*

RAP 9.4 pertains to agreed reports of proceedings. The rule provides:

> The parties may prepare and sign an agreed report of proceedings setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented for review. The agreed report of proceedings must include only matters which were actually before the trial court. An agreed report of proceedings should be in

the same form as a verbatim report, as provided in rule 9.2(e) and (f). An
agreed report of proceedings may be prepared if the court reporter's notes
or the electronic recording of the proceeding being reviewed is lost or
damaged.

RAP 9.4. "This rule was meant to allow excerpts from the verbatim report, a narrative

report, or some combination of each." *Waits*, 200 Wn.2d at 515 (citing 2A TEGLAND,

*supra*, RAP 9.4 author's cmts. at 661). The agreed report must be submitted to the trial

judge under RAP 9.5(b). *Id.*

Chenoweth, with a nod to *Waits*, argues that only a reconstructed record that is

equivalent to a verbatim transcript can permit effective appellate review of jury selection.

Chenoweth's argument is not supported by *Waits*. Rather, *Waits* requires a record

sufficient for effective appellate review. Where the reconstructed record adequately

shows the absence of error, the record is sufficient under *Waits*.

With respect to the constructed record of jury selection, the trial court found "the

State has undertaken due diligence to attempt to reconstruct the missing record of jury

selection and *voir dire* in this case, . . . [and] the State's Proposed Supplemental Narrative

Report of Proceedings . . . [is] the best available record of [that proceeding]." CP at 227-

28. Chenoweth does not assign error to this finding. Substantial evidence supports it.

Here, the deputy prosecuting attorney handling this appeal declared that he interviewed

the attorneys who tried the case and utilized the trial court clerk's minutes and record of

jurors from jury selection to assist in creating the narrative report of jury selection. The deputy prosecutor additionally reached out to the jury administration, the county clerk, witnesses, and three jurors, and no one recalled any events during jury selection beyond what was recorded in the clerk's minutes and records. In addition, the deputy prosecutor worked with defense counsel on appeal before submitting the reconstructed record to the trial court for signature.

In its order, the court noted that Chenoweth "preserved no objection or exception" during the jury selection proceedings. CP at 228. The trial court concluded that there was "no apparent GR 37, *Batson*, or other manifestation of systemic injustice on this record." CP at 228. In other words, with the input of numerous trial participants and recorded notes, there was no evidence of any error during jury selection.

Under these circumstances, the narrative report of jury selection adequately shows the absence of error during jury selection and thus is sufficient under *Waits* to permit effective appellate review.

B.    CONSIDERATION OF *SELL* FACTORS AND RIGHT TO BE PRESENT

Chenoweth argues the trial court violated his constitutional right to due process when, in his absence, it authorized antipsychotic medications to be involuntarily administered to restore his competency and without first considering the *Sell* factors. We address the two issues separately.

10

No. 37846-2-III
*State v. Chenoweth*

>    1.    *Consideration of* Sell *factors*

Forcibly medicating a person against their will "'represents a substantial interference with that person's liberty.'" *State v. Mosteller*, 162 Wn. App. 418, 424, 254 P.3d 201 (2011) (quoting *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)). In rare circumstances, the State can forcibly administer unwanted medications solely for trial competency purposes. *Id*. (citing *Sell*, 539 U.S. at 180). Before the trial court can order the forced administration of medications in such situations, however, it must consider certain factors, known as the *Sell* factors. *Id.* at 425.

Here, the agreed order allowing administration of involuntary medication set forth the four *Sell* factors, and an "X" appears in the box next to each of the factors. In addition, Dr. Travers' report, which the agreed order was based on, contained all the necessary facts to support the *Sell* factors. Trial courts are not automatons, signing orders without reading or reflecting on them. Where the factual record supports the court's written findings, we treat them as sufficient. *See In re Marriage of Horner*, 151 Wn.2d 884, 895-96, 93 P.3d 124 (2004) (in determining whether trial court considered necessary factors, we may look to the order itself and whether the record establishes the existence of the factors). We are of the opinion that the trial court *did* consider the *Sell* factors. Chenoweth provides no authority, and we have found none, that requires the trial court to also make oral findings.

11

2.      *Chenoweth's absence at the* Sell *hearing*

Chenoweth argues that a competency hearing is a critical stage of a criminal prosecution.  The State argues that any error in obtaining Chenoweth's presence for the competency hearing was harmless beyond a reasonable doubt.  We agree with the State.

Under the confrontation clause of the Sixth Amendment to the United States Constitution and the due process clause of the Fourteenth Amendment, a criminal defendant has a constitutional right to be present during all "critical stages" of the criminal proceedings.  *State v. Rooks*, 130 Wn. App. 787, 797, 125 P.3d 192 (2005) (citing *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985); *State v. Berrysmith*, 87 Wn. App. 268, 273, 944 P.2d 397 (1997)).  And unlike the United States Constitution, the Washington Constitution provides an explicit guaranty of the right to be present: "'In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel.'"  *State v. Irby*, 170 Wn.2d 874, 884-85, 246 P.3d 796 (2011) (quoting WASH. CONST. art. I, § 22).

However, due process does not require the defendant's presence in a criminal proceeding "'when presence would be useless, or the benefit but a shadow.'" *Berrysmith*, 87 Wn. App. at 273 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106-07, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).  The core of the constitutional right to be present is the right to be present when evidence is being presented.  *In re Pers. Restraint of Lord*,

12

123 Wn.2d 296, 306, 868 P.2d 835 (1994) (citing *Gagnon*, 470 U.S. at 526). When the right to confrontation is not implicated, as here, the court must address two questions in determining whether the hearing was a critical stage in the proceedings. *Berrysmith*, 87 Wn. App. at 273-74 (citing *Gagnon*, 470 U.S. at 526; *Pers. Restraint of Lord*, 123 Wn.2d at 306). First, whether the subject of the hearing related to a purely legal matter and, second, if so, whether the absence of the defendant affected the opportunity to defend against the charge, "or whether a fair and just hearing was thwarted by his absence." *Id*.

We find it unnecessary to determine whether the *Sell* hearing was a critical stage for purposes of due process. This is because, as explained below, Chenoweth's absence at the hearing was harmless beyond a reasonable doubt.

A violation of the due process right to be present is subject to harmless error analysis. *Irby*, 170 Wn.2d at 885. "'The burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt.'" *Id*. at 886 (quoting *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983)).

We first note the record does not show that Chenoweth was involuntarily administered antipsychotic medication. Dr. Strandquist described Chenoweth as "compliant" "[o]ver the course of [his] admission." CP at 123. In addition, there is no evidence that Chenowith was involuntarily medicated at any time after his competency

13

was restored.  If Chenoweth was not involuntarily medicated, his absence from the *Sell*

hearing had no impact whatsoever and the State has met its burden.

Regardless, Chenoweth told Dr. Strandquist the medication made a "significant

difference in helping him feel better [and] denied experiencing any significant side

effects."  CP at 123.  Most important, Chenowith's competency was restored, and he was

able to assist his counsel at trial.  Under these circumstances, any due process violation

was harmless beyond a reasonable doubt.

SAG ISSUES I & II

RAP 10.10 permits a defendant to file a pro se SAG if the defendant believes his

appellate counsel has not adequately addressed certain matters.

Chenoweth submitted an SAG raising two arguments.  In the first, he seems to

argue he was not informed of warrants and states that "evidence was digital."  In the

second, he writes "self defense" and "genocide conspearisey [sic]."

Chenoweth's "arguments" fail to identify any error for this court to review.

RAP 10.10(c).  We consider only issues raised in an SAG that adequately inform us of

the nature and occurrence of the alleged errors.  *State v. Alvarado*, 164 Wn.2d 556, 569,

192 P.3d 345 (2008).

14

No. 37846-2-III
*State v. Chenoweth*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Fearing, J.                        Pennell, J.

15